**ASSOCIATED INDUSTRIES OF MISSOURI, et al.,**
Respondents,

v.

**Jay ANGOFF, Director, Department of Insurance, State of Missouri,**
Appellant.

No. WD 52130.

Missouri Court of Appeals,
Western District.

Nov. 19, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 24, 1996.

Application to Transfer Denied
Feb. 25, 1997.

Mark W. Stahlhuth, Mo. Dept. of Insurance, Jefferson City, for appellant.

Richard S. Brownlee, II, Jefferson City, for respondents.

Before HANNA, P.J., and SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

This case involves the issue of the authority of the Director of the Missouri Department of Insurance to regulate stop-loss insurance coverage, which is indemnity coverage issued to an employer maintaining a self-funded health plan to reimburse the employer for large medical expense losses incurred by the employees protected by the plan.

The State of Missouri, in § 376.421, RSMo 1994 [1], regulates policies of group health insurance delivered in this state. The law provides that policies meeting certain specifications may be issued. The statute also provides that other policies of group health insurance may be issued when the Director of Insurance is satisfied that the policies meet certain standards. The Missouri statutes do not purport to address stop-loss coverage in any way.

In this case, the Director claims that he has authority for 20 CSR 400–2.150, a regulation which purports to regulate certain forms of stop-loss insurance by defining it and

---

1. All statutory references are to Revised Statutes of Missouri 1994, unless otherwise indicated.

treating it as medical expense insurance, when the policy has certain features which, as a practical matter, tend to transfer much of the risk from the employer or the plan to the insurance company. The Director also now seeks to modify the regulation by tightening further the authority over such coverage. In a suit filed by opponents of the Director's actions, the Circuit Court of Cole County held that the Director had no statutory authority for the rule, either as now extant or as proposed to be amended. The Director appeals, contending that the trial court erroneously declared the law.

## STOP–LOSS INSURANCE

■ The parties agree that there are two general types of stop-loss insurance: aggregate stop-loss coverage and specific stop-loss coverage. In both cases the benefit is paid to the employer (or to the trustees of a self-funded plan). Aggregate stop-loss coverage reimburses the employer for any overage above the expected amount of the aggregate claims. Specific stop-loss coverage pays a benefit after a cap on any individual is exceeded. The cap is, in effect, a deductible. The lower the deductible, the more the risk is shifted to the insurer. The Director suggests that the distinction between health insurance and stop-loss coverage becomes unclear when the insurance company assumes most of the plan's risk but in form provides coverage only to the employer. The Director believes that it is his responsibility to look to the reality of how the risk is being allocated, and to categorize coverage accordingly, rather than be guided by the apparent form of the coverage. The Director points out that insurance commissioners of other states have contended that, at low deductibles, stop-loss policies are "mere vehicles" designed to avoid compliance with recent health insurance regulation. The Director points to the fact that § 374.045 authorizes the Director to effectuate and to aid the interpretation of the insurance laws.

The opponents of the regulation argue that the Missouri statutes simply do not authorize regulation of stop-loss coverage, at any threshold deductible, regardless of how the risk may be allocated. They argue that there is no need for any interpretation of the insurance laws when the laws are clear, and they contend that the statutes clearly differentiate health insurance from stop-loss coverage by characterizing group health insurance coverage as coverage providing a benefit directly to the employee. The opponents point out that there is an express limitation on rulemaking under § 374.045.3, to wit: that no rule or regulation may conflict with any law of this state. They assert that the Director's measures conflict directly with § 376.421, which do not permit health insurers to pay a benefit directly to the employer. They point out that this express definitional exclusion is exactly how stop-loss coverage works. The opponents also claim that the Director's authority is pre-empted by the Federal Employees Retirement and Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, and that the trial court correctly found that the Director's authority had been pre-empted.

## STANDING

The Director first complains that the plaintiffs have no standing to maintain this action. The petition was filed in the circuit court by four plaintiffs: Associated Industries of Missouri; Missouri Chamber of Commerce; General American Life Insurance Company; and St. Louis Area Business Health Coalition. Associated Industries of Missouri is a Missouri not-for-profit corporation of more than 1,400 members representing all phases of the Missouri business community. Many of these members utilize stop-loss coverage. The Missouri Chamber of Commerce is a Missouri not-for-profit corporation with over 3000 members, many of whom maintain self-funded health plans and utilize stop-loss coverage. General American Life Insurance Company is a Missouri mutual life insurance company which, among other lines of insurance, issues stop-loss insurance coverage to many self-funded non-insured health plans. The St. Louis Area Business Health Coalition is a Missouri not-for-profit corporation comprised of 40 employers and employee organizations in St. Louis who purchase health care for more than 40,000 employees and dependents.

The Director alleges that the trial court erred in issuing any judgment other than one dismissing the petition because none of the respondents have standing to challenge the regulation. The Director points out that Associated Industries of Missouri, the Missouri Chamber of Commerce and the St. Louis Area Business Health Coalition are not insurance companies, are not regulated by this rule and do not plead any facts that would give rise to a legal theory that would give them standing to seek relief on behalf of an insurance company. The Director also challenges the standing of General American Life Insurance Company, claiming that it has not pleaded and proved that it issues policies which are affected by this rule.

■■■ The respondents concede that the Director has a valid point as to the three associations as they are not regulated insurance companies and have not shown that they individually utilize stop-loss insurance.[2] General American Life Insurance Company, on the other hand, issues policies of stop-loss insurance coverage. In order to have standing, a party must show only a legally protectable interest in the relief sought. *Neighbors Against Large Swine Operations v. Continental Grain Co.*, 901 S.W.2d 127, 132 (Mo. App.1995). For a party to have a legally protectable interest, that interest must be one that contemplates an interest, either personal or pecuniary, that is subject to some consequential relief, either immediately or prospectively. *Phillips v. Missouri Dep't of Social Servs.*, 723 S.W.2d 2, 4 (Mo. banc 1987). General American contends that it has both a present and prospective interest in the declaratory relief. General American issues stop-loss insurance coverage to many self-funded non-insured health plans in Missouri. We do not think it is necessary for General American to show that any of its currently issued policies fit within the parameters of the regulatory authority asserted by the Director. It is enough that it has a prospective or potential interest affected by the Director's action. Because General American has standing, the trial court did not err in exercising jurisdiction over this controversy.

## THE DIRECTOR'S PROPOSAL

Notice of the proposed rulemaking, an amendment of 20 CSR 400–2.150, was published in the Missouri Register on May 1, 1995. The Department of Insurance planned to amend the Purpose section of the rule and sections 1 through 3 and add sections 4 and 5. The purpose of the proposed change in the rule is to effectuate and aid in the interpretation of § 376.405, § 376.426 and § 376.777 by establishing that stop-loss coverage, with certain exceptions, will be deemed medical expense insurance, and specifying the insurance laws applicable to stop-loss coverage.

The proposed rule reads:

**20 CSR 400–2.150 Stop–Loss Coverage for Self–Insured Health Plans**

(1) Definitions. For purposes of this rule—

(A) Employee health benefit plan, or plan, means a plan or program of health benefits established and operated by one (1) or more employers or by a person acting on behalf of one (1) or more employers whether or not such plan constitutes an employee welfare benefit plan pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. section 1001, et seq.;

(C) Medical expense insurance means all group or individual health insurance policies providing coverage on an expense-incurred basis issued by an insurer, all group service or indemnity contracts

**2.** The three associations request that they be granted the status of amicus curiae with the right to brief the case and argue the issues under the authority of *State ex rel. Danforth v. Dale Curteman, Inc.*, 480 S.W.2d 848, 850 (Mo.1972). Their request is granted. Two other amicus curiae briefs were filed in this action. The National Association of Insurance Commissioners filed a brief on behalf of the Director. The National Association of Insurance Commissioners is a non-profit unincorporated association with a membership consisting of the principal insurance regulatory officials of the 50 states, the District of Columbia, and the U.S. territories and insular possessions of the United States. The Self–Insurance Institute of America, Inc. has filed a·brief on behalf of the respondents. The Self–Insurance Institute of America, Inc. is a non-profit corporation composed of over 1000 members dedicated to the advancement and protection of the self-funding industry.

issued by a not-for-profit health services corporation, all contracts providing coverage for basic services of a health maintenance organization and all stop-loss policies except as otherwise exempted by section (2) of this rule; and

(D) Stop-loss policy means an insurance policy, certificate, contract, endorsement, attachments, amendment or other modification to that contract, issued to an employer, or trustee or association acting on behalf of that employer, to insure against excessive losses of the self-funded employee health benefit plan, which reimburses the employer or a person acting on the employer's behalf for claims which exceed a specific (individual claim) or an aggregate dollar amount set forth in the policy. (2) A stop-loss policy shall be deemed to be medical expense insurance subject to the insurance laws of this state regarding health insurance policies except where the following conditions are met:

(A) The policy is issued to and insures the sponsor of the plan, or the plan itself, and not the employees, dependents, members, participants or providers of the plan;

(B) Payment under the policy is made to the sponsor or administrator of the plan or the plan itself, and not to the plan's employees, dependents, members, participants or providers;

(C) The stop-loss policy provides that the insurer shall pay losses experienced by the plan after the attachment point is reached which are, by the terms of the policy, either incurred or paid during the period of the stop-loss policy;

(D) The stop-loss policy provides that the plan's or the plan's sponsor's bankruptcy or insolvency shall not relieve the insurer from its contractual obligations under the stop-loss policy;

(E) Any specific attachment point beyond which the insurer is liable is at least ten thousand dollars ($10,000) per individual covered under the plan; and

(F) Any aggregate stop-loss attachment point beyond which the insurer is liable is set at a level such that the insurer can demonstrate that the likelihood of a claim being made does not exceed twenty per-

cent (20%) or, in the alternative, any aggregate stop-loss attachment point beyond which the insurer is liable is at least one hundred twenty percent (120%) of expected losses for the group.

(3) All stop-loss insurance issued in this state is to be included in the issuer's computation of premium tax liability and the insurer's obligation for assessments to fund the Missouri Health Insurance Pool.

(4) Any insurer which issues stop-loss policies which are otherwise exempt under the provisions of section (2) of this regulation shall maintain the following records regarding such otherwise exempt policies:

(5) The 1995 amendment to this rule shall apply to policies issued or renewed on or after January 1, 1996.

The proposed rule thus would have the effect of regulating, as medical expense insurance, any stop-loss coverage which is triggered by any expenses of at least $10,000 per individual claimant, and by aggregate expenses equal to 120% of expected losses for the group. General American points out that, among other things, the proposed amendment to the rule: (1) adds a definition of "health benefit plan" which specifically includes ERISA self-funded benefit plans; (2) purports to define stop-loss coverage as medical expense insurance and make it subject to regulation as such under the insurance laws of the state; (3) narrows the safe harbor limit for specific stop-loss from $7,500.00 to $10,000.00; (4) changes the limit for aggregate stop-loss; (5) subjects self-funded plans to overview by the Department of Insurance; (6) deletes safe harbor provisions for employers of more than 100 employees; (7) deletes the ERISA plan exception; and (8) adds record keeping and reporting responsibilities for self-funded plans.

## THE TRIAL COURT'S DECISION

A petition for declaratory judgment was filed on November 2, 1995. In the petition, the plaintiffs asked that a preliminary stay and injunction be granted to suspend the effective date of the order of rulemaking, that 20 CSR 400–2.150 be declared void and

beyond the statutory authority of the Director and that the court enter a permanent order enjoining the order of rulemaking. In essence, the plaintiffs were asking the court not only to hold that the rulemaking was without authority but also to hold void 20 CSR 400–2.150, which the rulemaking purported to amend. The case was submitted to the trial court on pleadings and affidavits. The trial court found that the rulemaking was without statutory authority and contrary to statutory law, stating:

a) The Director has no statutory authority to regulate "stop-loss" coverage issued to employers, or plans, or persons acting on behalf of self-funded, non-insured health plans pursuant to Section 376.421.

b) The Director's rule does not effectuate or aid in the interpretation of any law of this state pertaining to the business of insurance since it is an attempt to redefine the term "group insurance" in some circumstances to include "stop-loss" insurance. Section 376.421 RSMo. authorizes group health insurance policies to be issued to specified groups to cover employees or members and their dependents, and specifically states it is not to benefit the employer.

c) It is in conflict with Sections 376.421 and 376.426 RSMo., in that it is an attempt through administrative regulation to expand the Director's authority over and to include "stop-loss" group health insurance for the employers' benefit. By adding "stop-loss" group health insurance to the definition of group health insurance coverage, the Director is illegally usurping authority over "stop-loss" coverages under the guise of regulating group health insurance pursuant to Sections 376.421 and 376.426 RSMo.

d) The proposed rule is contrary to and is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), in that it is an attempt through administrative regulation to negate the concept that self-insured plans are deemed not to be insurers or acting as insurers under ERISA.

The trial court ordered that the Director and the Department of Insurance cease, desist and refrain from the application or enforcement of 20 CSR 400–2.150 because the extent and the proposed regulation are contrary to both Missouri law and Federal law.

## STANDARD OF REVIEW

■ In this action for declaratory judgment, tried before the trial court without a jury, the trial court's decision will be affirmed unless there is no evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Associated Gen. Contractors of Missouri v. Department of Labor & Indus. Relations,* 898 S.W.2d 587, 590 (Mo.App.1995). Administrative rules and regulations issued under the authority of an act should not be invalidated unless they are unreasonable and plainly inconsistent with the act. *Foremost–McKesson, Inc. v. Davis,* 488 S.W.2d 193, 197 (Mo. banc 1972). The burden is on the challenger of the rule to show that it bears no reasonable relation to the legislative objective. *Id.*

■ Administrative regulations, however, must be promulgated within the scope of the legislative authority conferred upon the state agency or these regulations are void. *Missouri Hosp. Ass'n v. Missouri Dep't of Consumer Affairs,* 731 S.W.2d 262, 264 (Mo. App.1987). They are also void if they attempt to modify or extend the statutes. *Id.* "The Division of Insurance has no authority to add to or to subtract from the law emanating from the general assembly and no authority to express a legally significant opinion as to how the law is to be construed or applied in civil litigation." *Harrell v. Total Health Care, Inc.,* 781 S.W.2d 58, 60 (Mo. banc 1989).

## STOP–LOSS v. HEALTH INSURANCE

■ The Director claims that the trial court erred in holding that 20 CSR 400–2.150 is void because the rule effectuates or aids in the interpretation of laws relating to the business of health insurance. The Director alleges that but for this rule, health insurers may avoid compliance with health insurance laws merely by labelling their health insurance policies as stop-loss. Furthermore, the

Director contends that the policies do not serve the purpose of spreading catastrophic risk and that the policies are health insurance policies as described by § 376.421.2.

█ Section 376.421 states, in pertinent part:

1. Except as provided in subsection 2 of this section, no policy of group health insurance shall be delivered in this state unless it conforms to one of the following descriptions:

(1) A policy issued to an employer, or to the trustees of a fund established by an employer, which employer or trustees shall be deemed the policyholder, to insure employees of the employer for the benefit of persons **other than the employer**. . . .

(Emphasis added). This section of the statute reflects the common understanding that group health insurance is issued to the employer for the benefit of the participating employees and not for the benefit of the employer. Where the statutory language is clear and unambiguous, there is no room for construction. *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). By definition, group health insurance does not provide benefits to the employer, and no policy of group health insurance is permitted to pay any benefit directly to the employer. Stop-loss insurance, on the other hand, does benefit the employer. It is issued to an employer or the trustees of a self-funded plan to protect the employer or trust from unusual or catastrophic losses. It provides no direct benefits whatsoever for any employee or their dependents.

Other jurisdictions have discussed the distinction between stop-loss insurance and health insurance. In *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708 (2nd Cir.1993), *rev'd on other grounds*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), in dealing with an ERISA issue, the court recognized the differences between stop-loss and traditional group health insurance:

Self-insured employee benefit plans and their employer sponsors ... often purchase stop-loss insurance to protect themselves against excess or catastrophic losses. Unlike traditional group-health insurance, stop-loss insurance is akin to reinsurance in that it does not provide coverage directly to plan members or beneficiaries. Rather, most stop-loss policies ... provide coverage to the plan itself if the total amount of claims paid by the plan exceeds the amount of anticipated claims by a specified sum.

*Id.* at 723.

The Fourth Circuit, in dealing with whether stop-loss insurance converts a self-funded plan into an insured plan, stated in *Thompson v. Talquin Bldg. Prods. Co.*, 928 F.2d 649, 653 (4th Cir.1991):

We agree with the district court that stop-loss insurance does not convert Talquin's self-funded employee benefit plan into an insured plan. Even with the stop-loss coverage, Talquin's Plan is directly liable to Talquin's employees for any amount of benefits owed to them under the Plan's provisions. The purpose of the stop-loss insurance is to protect Talquin from catastrophic losses, it is not accident and health insurance for employees. Instead of covering employees directly, the stop-loss insurance covers the Plan itself. Thus, for the purposes of ERISA, the Plan remains self-funded even with the stop-loss insurance.

In *Brown v. Granatelli*, 897 F.2d 1351 (5th Cir.1990), the court held that a Texas statute requiring that individual and group health insurance policies apply to provide coverage for newborns did not apply to a stop-loss policy purchased by the employee benefit plan. In so holding, the court stated:

[W]e are persuaded that under Texas law stop-loss insurance is not accident and sickness insurance. *Accord Cuttle v. Federal Employees Metal Trades Council*, 623 F.Supp. 1154, 1157 (D.Me.1985) (holding that a stop-loss insurance policy is not group health insurance under Maine law); *cf. United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161–62 (9th Cir.1986) (holding that because stop-loss insurance is not health insurance for plan participants, a plan which purchases such insurance is not an insured plan subject to state regulation under *Metropolitan*

[*Life Insurance Co. v. Commonwealth of Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)*]*).

*Id.* at 1354.

In this case, the Director argues that § 376.421.2 authorizes him to treat stop-loss insurance as group health insurance in 20 CSR 400–2.150. Section 376.421.2 provides:

2. Group health insurance offered to a resident of this state under a group health insurance policy issued to a group other than one described in subsection 1 of this section shall be subject to the following requirements:

(1) No such group health insurance policy shall be delivered in this state unless the director finds that:

(a) The issuance of such group policy is not contrary to the best interest of the public;

(b) The issuance of the group policy would result in economies of acquisition or administration; and

(c) The benefits are reasonable in relation to the premiums charged.

The Director claims that because this section expressly recognizes that a group health insurance policy may be issued to a group other than those described in section 1 of the statute, it was intended to draw within its ambit stop-loss coverage. We do not find this argument persuasive. Section 376.421.2 addresses the issuance of a group health insurance policy to any group other than those described in subsection 1. The groups described in section 1 are as follows: 1) employees; 2) debtors of a particular creditor; 3) members of a labor union; 4) a voluntary association of more than 100 members; 5) members of a credit union; and 6) a group specifically described by state law as eligible for group life insurance. The fact that the Director is given some discretion in determining the reasonableness of group *health insurance* plans issued to other *types of groups* does not mean that the Director has authority to declare as being health insurance that which is not in reality health insurance. Nor does it mean that the Director can designate as health insurance a policy which does what health insurance is not permitted to do—*i.e.*, furnish a benefit directly to the plan or the employer rather than to the members of the insured group. The statute does not authorize the Director to redefine group health insurance. There is nothing in this language which expressly or impliedly gives the Director power to regulate stop-loss as group health insurance.

The Director argues that he *should* be entitled to regulate stop-loss coverage when the features of the policy at issue are designed in such a way as to transfer much of the risk from the employer or the plan to the insurance company. This court recognizes the logic of these arguments, and understands the concerns of the Director as well as those of the National Association of Insurance Commissioners. The court in *Brown v. Granatelli, supra,* recognized this concern when the court, after distinguishing between health insurance and stop-loss insurance, stated as follows:

... [W]e are wary lest an overly literal reading of the statute frustrate an otherwise manifest legislative purpose. We do not suggest that [Texas law] can be avoided by naming an employee benefit plan as the insured on a policy which in reality insures the plan participants. If, for example, a plan paid only the first $500 of a beneficiaries' health claim, leaving all else to the insurer, labeling its coverage stop-loss or catastrophic coverage would not mask the reality that it is close to a simple purchase of group accident and sickness coverage.... In short, if the Plan were merely a conduit for claims from participants to [the insurer] we could not reach the same conclusion.

897 F.2d at 135.

The court in *Brown* thus recognized that one could have a so-called stop-loss plan in which the designation of the employer as the beneficiary is essentially a sham because of the fact that almost all of the risk is transferred to the insurer. However, the authority to regulate health insurance which is speciously labeled stop-loss coverage is not the same as the authority to regulate stop-loss coverage with deductibles which are lower than the level the Director considers desirable. While we agree that we need not be

guided by labels, and are entitled to look to the substance of an arrangement, we also believe that, since there is no express statutory authority to regulate stop-loss coverage, the burden is on the Director to show that the thresholds and criteria he has established in his rule are drawn so narrowly as to address only those cases involving shams. We agree that the Director could show he is really regulating group health insurance, even though it has a stop-loss label. This, however, he has not done. We understand that the criteria chosen by the Director were drawn after studies of claims distribution, the policies of other states, and recommendations of thresholds by the National Association of Insurance Commissioners. However, the record in this case does not demonstrate that all or most of the policies which would be governed by the rule could reasonably be considered shams. Logic would suggest that stop-loss ceases to be stop-loss when the threshold of specific stop-loss is so low that there is nothing "excess" or "catastrophic" about the coverage at all, because it is routine for the claims of individual claimants to exceed the threshold. The Director has not demonstrated that it is routine in self-funded plans for claims to exceed $10,000.00 per claimant, nor that they routinely exceed that level by a substantial sum. In the actuarial studies submitted to the trial court, there is no line of demarcation as to when stop-loss actually becomes health insurance in effect. The Director expresses concern about policies of specific stop-loss having a $1.00 deductible, but the Director asks for authority to regulate policies having a $10,000.00 deductible. One actuary, testifying by way of affidavit, was asked how one determines when the risk transferred from the plan to the insurance company is so significant "that the stop-loss insurance is really health insurance." He responded in his affidavit that the question of whether the risk transfer is so great as to cause stop-loss to constitute group health insurance:

> is a policy making question beyond the scope of my analysis.... My analysis provides policy makers with tools to quantify the risk transfer between the health plan and the stop-loss insurer. The policy maker must balance this information with

other considerations in setting the thresholds for the characterization of such policies as health insurance.

His answer illustrates the difficulty a court faces in attempting to determine whether the stop-loss arrangements in question are shams. The data supplied by the Director appears tailored more to a legislative determination than to a judicial determination, at least on the record in this case. In view of the fact that the legislature has not provided authority to the Director to regulate stop-loss insurance, the Director's attempts to regulate some forms of stop-loss coverage must be specifically justified. And without evidence that these so-called self-funded plans are really insured plans in disguise, we cannot find that the Director has rule-making authority as to the insurance policies addressed by the current or the proposed rule. We cannot convict the trial court of error in its ruling.

In view of our decision affirming the trial court determination that the regulation and the proposed amendments are not statutorily authorized, we need not address the issue of whether the proposed regulation is pre-empted by ERISA.

The judgment of the trial court is affirmed.

All concur.