FIDELITY SECURITY LIFE
INSURANCE COMPANY,
Appellant,

v.

DIRECTOR OF REVENUE and
Director of Insurance,
Respondents.

No. SC 82427.

Supreme Court of Missouri,
En Banc.

Dec. 5, 2000.

John C. Cozad, James Donley, Steven C. Krueger, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mark W. Stahlhuth, Sp. Asst. Atty. Gen., Alana M. Barragan-Scott, Associate Sol., Jefferson City, for Respondents.

HOLSTEIN, Judge.

Appellant, Fidelity Security Life Insurance Company (Fidelity), seeks review of an Administrative Hearing Commission (AHC) decision affirming the director of revenue's assessment of its insurance premium tax for 1996. Fidelity also named the director of insurance as a party respondent. Review of a decision of the AHC involving the construction of revenue law falls within the jurisdiction of this Court. *Mo. Const. art. V, sec. 3.* The decision of the AHC is affirmed in part and reversed in part.

█ The AHC's decision is upheld when authorized by law, when supported by competent and substantial evidence upon the whole record, and when the decision is not clearly contrary to the reasonable expectations of the General Assembly. *Whitehead v. Director of Revenue*, 962 S.W.2d 884, 885 (Mo. banc 1998); *sec. 621.193.*[1] With respect to questions of law, this Court conducts a *de novo* review. *Delta Air Lines, Inc. v. Director of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995).

## I.

█ Fidelity is a life insurance company with its principal place of business in Kansas City, Missouri. The state of Missouri taxes, at a rate of 2 percent per annum, the premiums that insurance companies receive from their policyholders. *Sec. 148.370.* From this premium tax, certain deductions and credits are allowed. Insurers may, for example, deduct the fees that they pay toward their yearly examination by the department of insurance. *Sec. 148.400.* In 1995, Fidelity's 2 percent premium tax was $96,677.66. It incurred $168,822.55 in deductible fees resulting from its insurance examination that year, an amount reducing its net premium tax to zero. The first point on appeal is whether Fidelity may carry forward the unused deduction into 1996.

█ Section 148.400 states in relevant part, "All insurance companies or associations organized in or admitted to this state may deduct from premium taxes payable to this state, in addition to all other credits allowed by law ... registration fees and examination fees paid...." Fidelity argues that the 1995 deduction surplus should be applied against the tax owing in 1996 because section 148.400 does not specifically limit the deduction to examination fees paid during the year. The critical statutory term is "taxes payable." Statutory

---

1. All references to statutes are to RSMo 1994 unless otherwise indicated.

terms are considered in their plain or ordinary and usual sense. *Ryder Student Transp. Serv., Inc. v. Director of Revenue,* 896 S.W.2d 633, 635 (Mo. banc 1995); *sec. 1.090.* "Payable" is defined as "due" or "requiring to be paid." *Webster's Third New International Dictionary* 1659 (1981). Arguably, taxes that are "requir[ed] to be paid" in 1995 do not include taxes due and owing in later years, as Fidelity suggests. But the phrase's precise meaning is less than perfectly clear. Where there is an ambiguity, statutes creating exemptions from taxation are strictly construed against the taxpayer. *Hyde Park Hous. P'ship v. Director of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993). Reading the ambiguous phrase in a light favorable to the taxing authority, the Court concludes that the deductions found in section 148.400 may only be taken in the current year, and unused amounts may not be carried forward.

■ This result is supported by the premise that tax deductions and credits are matters of legislative grace and are available only to the extent authorized by statute. *Herschend v. Director of Revenue,* 896 S.W.2d 458, 461 (Mo. banc 1995); *Brown Group, Inc. v. Administrative Hearing Comm'n,* 649 S.W.2d 874, 877 (Mo. banc 1983). The General Assembly authorizes the carry-over of a deduction, exemption or credit by including language to that effect. *See, e.g., sec. 135.503.3,* RSMo Supp.1999 ("All such [certified capital investment] credits against state premium tax liability may be carried forward indefinitely until the credits are utilized."); *sec. 32.115.4,* RSMo Supp.1999 ("Any [Neighborhood Assistance Act] tax credit not used in the period for which the credit was approved may be carried over the next ten succeeding ... years until the full credit has been allowed."); *sec. 135.545,* RSMo Supp.1999 ("A taxpayer may carry

forward any unused [transportation investment] tax credit for up to ten years ...."); *sec. 135.750.3,* RSMo Supp.1999 ("Taxpayers may carry forward unused credits for up to five tax periods ...."); *sec. 620.1039.3* (tax credit for research expenses); *sec. 620.495.12(2)* (small business incubator program tax credit); *sec. 135.110.14(2* ), RSMo Supp.1999 (credit for new or expanded business facility).

Reading "taxes payable" in a light most favorable to the taxing authority, and because the legislature knows how to provide for a carry-over if such is its intent but did not do so here, this Court finds that Fidelity is not entitled to carry forward the unused deduction.

## II.

■ Similar reasoning applies to Fidelity's second point on appeal, concerning its attempt to carry forward its unused deduction for assessment fees paid to the Missouri Life and Health Insurance Guaranty Association (MOLHIGA) in the amount of $23,956.[2] This time with respect to section 376.745.1, allowing the guaranty association assessments as an "offset against ... premium tax liability," Fidelity again argues that this section contains no express limitation on the deduction and that its purpose, to reimburse insurance companies for the amount of the assessments, should not be frustrated. As with Fidelity's first point, the Court rejects these arguments. The legislative purpose that Fidelity suggests is not apparent. When the General Assembly intends a carry-over of a deduction, exemption or credit, it includes language to that effect, and no such language is present in section 376.745.1.

Furthermore, it is clear that the deduction is only allowed "to the extent of twenty percent of the amount of [the MOLHIGA] for each of the five calendar years following the year in which such assess-

---

**2.** MOLHIGA is a non-profit legal entity and insurers must be a member in order to transact insurance business in Missouri. The purpose of MOLHIGA is to protect people against the lapse of life and health insurance coverage due to financial impairment or insolvency of the insurance company. *Sec. 376.720.*

ment was paid." *Sec. 376.745.1.* That is, in 1995 Fidelity may deduct twenty percent of the fees paid from 1990 to 1994. In 1996, Fidelity may deduct the same percentage of fees paid from 1991 to 1995. Construing the section as Fidelity suggests, allowing the carry-over of unused 1995 deduction into 1996, would undermine this provision and essentially permit the deduction of MOLHIGA assessment fees outside the five-year period allowed by the statute.

### III.

■ Fidelity's third point challenges the AHC's ruling that amounts paid by Fidelity under stop-loss insurance plans are not deductible under section 148.390. Fidelity's claim has merit, and the AHC decision is reversed with respect to this claim.

Section 148.390 allows insurers to deduct "the entire amount of benefit payments actually made" from the "gross amount of premiums received on policies or contracts providing health insurance benefits for the benefit of some or all of the employees of one or more employers...." The section, in other words, allows insurers to deduct the benefits they pay on policies providing health insurance benefits to employees from the gross premiums they receive on the same policies. On its 1996 return, Fidelity included a deduction in the amount of $1,488,113.41 that consisted of benefits paid under stop-loss policies. The question is whether benefit payments made under stop-loss policies qualify as health insurance benefits to employees under section 148.390.

■ Stop-loss coverage is defined as "indemnity coverage issued to an employer maintaining a self-funded health plan to reimburse the employer for large medical expense losses incurred by the employees protected by the plan." *Associated Indus. of Missouri v. Angoff,* 937 S.W.2d 277, 278 (Mo.App.1996). Key to the analysis is whether these stop-loss policies provide "health insurance benefits" that are "for the benefit of some or all of the employees ..." as section 148.390.2 requires. By definition, stop-loss coverage is a form of health insurance. Employers are directly reimbursed under stop-loss policies for employee healthcare expenses above the expected amount of claims. Stop-loss policies also benefit employees, however, satisfying the second requirement of section 148.390.2 that policies be for the benefit of employees. Stop-loss coverage prevents employees from bearing the burden of large healthcare claims that could plunge an employer, especially a small employer, into financial devastation. Employers who self-fund healthcare insurance use this coverage not only to protect themselves but also to protect the jobs and healthcare benefits due their employees in the event of a catastrophic loss.

In another context, the court of appeals found that stop-loss insurance was not "group health insurance" subject to regulation by the department of insurance under section 376.421. *Angoff,* 937 S.W.2d at 283. This was due in part to the fact that the stop-loss policies provide "no direct benefits" to any employee. *Id.* Unlike in the regulatory scheme of section 376.421, however, nothing in the text of section 148.390.2 expressly or implicitly limits the deductions to. premiums that result in direct benefits to employees. Also relied upon was section 376.421.1(1) defining group health insurance as a policy insuring employees of an employer issued "for the benefit of persons other than the employer." Section 148.329.2, unlike section 376.421, does not limit the health insurance premium subject to the tax exemption to policies that pay benefits to persons "other than the employer." Section 148.329.2 requires that some or all employees benefit from the coverage but does not directly rule out employer benefit as does section 376.421.

While it is true that ambiguities in a tax deduction statute are construed favorably to the taxing authority, it is equally true that the primary rule of statutory construction requires the Court to determine

the meaning of a statute based on the words used in the statute. *Hadlock v. Director of Revenue*, 860 S.W.2d 335, 337 (Mo. banc 1993). Because nothing in the text of section 148.390.2 requires that the healthcare benefits to the employee be direct or that no benefit inure to the employer under the policy, the Court will not read into the statute words or provisions that do not appear there. *State of Missouri v. SKC Elec., Inc.*, 936 S.W.2d 802, 804 (Mo. banc 1997). In the limited context of section 148.390.2, the payment of premiums for stop-loss insurance is deductible.

## IV.

■ Fidelity's final point concerns the fees charged by third-party administrators (TPAs) who manage certain policies issued by Fidelity; specifically, whether these fees constitute premiums subject to tax. The AHC held that administrative fees charged by TPAs are direct premiums for purposes of Fidelity's tax assessment. Fidelity argues that such fees charged by TPAs are not in the nature of premiums because they are not consideration paid to indemnify a risk. The AHC's finding was correct.

■ The term "premiums" is not defined in section 148.320. But in context, the plain and ordinary meaning of the word premium is the consideration paid by an insured to an insurer for a contract of insurance. *Black's Law Dictionary* 1181 (6th ed.1990); *Webster's Third New International Dictionary* 1789 (1981). The record shows that Fidelity requires some insureds to pay charges directly to certain TPAs, including some Fidelity affiliates, as part of the consideration for Fidelity issuing a contract of insurance. The record also supports the conclusion that these fees for administrative services provided by TPAs are in lieu of the normal administrative expenses borne by the insurer. Thus, a TPA charge is simply part of the premium demanded by Fidelity for its contracts of insurance. Because there is no ambiguity, resort to canons of construction is not permitted. *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988).

Any lingering doubt that a payment to a TPA is to be treated as a premium is resolved by sec. 376.1080. It provides that if an insurer uses the services of a TPA, "the payment to the administrator of any ... charges for insurance by or on behalf of the insured party shall be deemed to have been received by the insurer...." A charge paid to an insurer as consideration for an insurance contract is a premium. While not dispositive, this statute is certainly indicative of the kind of charges the legislature intended to fall within the ambit of the term "premiums ."

In the course of arguing that TPA charges are not premiums subject to tax, Fidelity claims that the director's method of calculating non-affiliated TPA charges was flawed. This point was not preserved in a point relied on and need not be addressed. It is sufficient to say there is no plain error.

## CONCLUSION

The decision of the AHC is reversed with respect to the stop-loss issue. The remainder of the decision is affirmed.

LIMBAUGH, COVINGTON, WHITE and WOLFF, JJ., concur.

PRICE, C.J., concurs in part and dissents in part in separate opinion filed.

BENTON, J., concurs in opinion of PRICE, C.J.

PRICE, Chief Justice, Concurring in Part and Dissenting in Part.

I concur with the majority opinion except as it limits the ability of insurance companies to deduct their "examination fees paid" from "premium taxes payable" only in the year of examination. No such limitation is expressly stated in Section 148.400, RSMo 1994. In pertinent part, the language of that section reads:

All insurance companies … may deduct from premium taxes payable … examination fees paid …"

With all due respect to the majority's attempt to parse the statute and to consider other statutory language, I believe this language is most simply and clearly read to allow the deduction from any premium taxes payable, even in future years.