RAMSEY COUNTY MEDICAL CENTER, INC., Plaintiff,

v.

Teresa A. BREAULT, Defendant-Respondent,†

v.

HARTZELL CORPORATION EMPLOYEE TRUST FUND, Third-Party Defendant-Appellant.

Court of Appeals

*No. 94–0530. Submitted on briefs October 24, 1994.—Decided November 8, 1994.*

(Also reported in 525 N.W.2d 321.)

†Petition to review denied.

269

For the third-party defendant-appellant the cause was submitted on the briefs of *Robert L. Bach* and *Penelope J. Phillips* of *Felhaber, Larson, Fenlon & Vogt* of Minneapolis, Minnesota.

For the defendant-respondent the cause was submitted on the brief of *Timothy T. Sempf* of *Novitzke, Gust & Sempf* of Amery.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Hartzell Corporation Employee Trust Fund (Hartzell Plan) appeals an order for summary judgment in which the court determined that the Hartzell Plan was not entitled to subrogation. The court concluded that ERISA did not preempt application of Wisconsin law because Hartzell Manufacturing's purchase of "stop-loss" insurance rendered the Hartzell Plan insured. The court therefore concluded that under Wisconsin subrogation law, the Hartzell Plan was not entitled to subrogation until Teresa Breault was made whole. The Hartzell Plan contends that despite Hartzell Manufacturing's purchase of stop-loss insurance, it remains a fully self-insured plan and that ERISA therefore preempts Wisconsin state regulations. Accordingly, the Hartzell Plan contends that the trial court erroneously granted summary judgment to Breault. Because we conclude that stop-loss insurance is not sufficient to destroy the uninsured status of an employee benefit plan, the trial court's summary judgment order is reversed.

On October 12, 1990, Teresa Breault was involved in a car accident with Rodney Marlow. As a result of injuries sustained in the accident, Breault sought treatment from the Ramsey Medical Center and incurred medical bills totalling $48,660.11. Breault subsequently filed suit against Marlow for damages arising out of the accident.

At the time of the accident, Breault's husband Jeffrey was employed by Hartzell Manufacturing and both

he and his wife were covered by the Hartzell Plan. The Hartzell Plan is a self-funded employee benefit plan sponsored by Hartzell Manufacturing. The Plan does not carry insurance; however, Hartzell Manufacturing, as the Plan's sponsor, has a stop-loss policy protecting it in the event the Plan incurs catastrophic losses.

In addition to hospital and weekly disability, the Hartzell Plan covers medical expenses incurred by its participants. Before making medical payments on behalf of a participant, however, the Plan requires the participant to sign a subrogation agreement. Under this agreement, the participant must reimburse the Plan to the extent that a third-party becomes obligated to pay benefits or damages to the participant. The Breaults refused to sign the subrogation agreement and consequently, the Hartzell Plan refused to pay Breault's medical bills.

The medical bills remained unpaid for more than one year, and Ramsey ultimately filed suit against Breault for the amount of the unpaid bills. Breault responded by filing a third-party complaint against the Hartzell Plan claiming that it was liable for the unpaid medical bills. Shortly thereafter, Breault filed a motion for summary judgment against the Plan. Prior to the hearing on the motion, the parties agreed to a stipulation consolidating Breault's claim against Marlow and Ramsey's claim against Breault. The stipulation further dismissed Marlow and his insurer from the suit; however, it ordered Marlow's insurer to pay the limits of Marlow's insurance policy, $50,000, to the court to be held in trust pending resolution of the remaining claims.

The court subsequently held a hearing on Breault's motion for summary judgment. At the hearing, Breault claimed that because Hartzell

Manufacturing purchased stop-loss insurance, the Hartzell Plan is an insured plan subject to Wisconsin state law. Accordingly, Breault argued that the Hartzell Plan had no right to subrogation until she was made whole for the damages and losses she suffered. The Hartzell Plan, on the other hand, argued that Hartzell Manufacturing's purchase of stop-loss insurance did not affect its status as an uninsured plan and that ERISA therefore preempts Wisconsin state law. The trial court agreed with Breault and found that Hartzell Manufacturing's purchase of stop-loss insurance rendered the Plan insured. Accordingly, the court found as a matter of law that the Hartzell Plan had no right to subrogation and granted Breault's motion for summary judgment.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2), STATS. When reviewing a grant of summary judgment, we apply the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816, 820 (1987). Because that methodology is familiar, we need not repeat it here. *See id.*

The Hartzell Plan contends that the trial court erred by granting summary judgment in favor of Breault because the stop-loss insurance purchased by Hartzell Manufacturing did not affect its status as an uninsured plan. In Wisconsin, the general rule is that an insurer has no right to subrogation "unless the insured [is] made whole . . . ." *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 271-72, 316 N.W.2d 348, 353 (1982). However, the *Rimes* doctrine is appli-

273

cable only if it is not preempted by ERISA. If ERISA preempts state law, the subrogation issue is determined by federal law, which does not restrict the subrogation rights of the health carrier until the injured party is made whole. Therefore, to resolve this case, we must first examine the pertinent provisions of ERISA.

Three provisions of ERISA are relevant to this case: the preemption clause, the savings clause and the deemer clause. The preemption clause of ERISA states that "[e]xcept as provided in subsection (b) of this section [the savings clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The parties concede that the *Rimes* doctrine relates to employee benefit plans and that ERISA preempts the *Rimes* doctrine as it relates to such plans. However, this concession does not end our discussion.

Before we may determine whether the preemption clause applies, we must review ERISA's savings and deemer clauses. Under the savings clause, state regulations pertaining to insurance are not preempted by ERISA. Specifically, the savings clause states: "[e]xcept as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). Thus, to the extent that the *Rimes* doctrine regulates insurance, it is saved from preemption. ERISA's deemer clause, however, limits the breadth of the savings clause. The relevant portion of the deemer clause states that "[n]either an employee benefit plan . . . nor any trust established

under such a plan, shall be deemed to be an insurance company . . . or to be engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts . . . ." 29 U.S.C. § 1144(b)(2)(B). Thus, while ERISA does not preempt state regulation of insurance companies, it prohibits states from "deeming" employee benefit plans as insurance companies or as being engaged in the business of providing insurance. However, despite the prohibition contained in the deemer clause, states may still regulate employee benefit plans in certain instances.

In *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985), the Supreme Court distinguished between insured employee benefit plans and uninsured employee benefit plans. *See also Petro v. D.W.G. Corp.*, 148 Wis. 2d 725, 436 N.W.2d 875 (Ct. App. 1989). The Court held that uninsured employee benefit plans are exempt from State regulations and are governed exclusively by applicable federal regulations. *Metropolitan Life*, 471 U.S. at 732-33. However, the states may indirectly regulate insured employee benefit plans. *Id.* Consequently, if the Hartzell Plan is an insured plan, it is saved from preemption and therefore subject to the *Rimes* doctrine. However, if the Plan is uninsured, ERISA preempts application of the *Rimes* doctrine and the Plan is entitled to subrogation.

Breault argues that because Hartzell Manufacturing purchased stop-loss insurance, the Hartzell Plan is an insured plan. Therefore, she contends that under *Rimes*, the Hartzell Plan is not entitled to subrogation.[1] The Hartzell Plan, however, contends that it is

---

[1] The parties agree that the $50,000 paid by Marlow's insurance company and held in trust by the court is not sufficient to compensate Breault for the damages she suffered.

not an insured plan. The Plan argues that stop-loss insurance does not affect the uninsured status of an employee benefit plan and that the *Rimes* doctrine is therefore preempted by ERISA. Thus, the sole issue presented in this case is whether Hartzell Manufacturing's purchase of stop-loss insurance rendered the Hartzell Plan an insured plan subject to state law. Because this is an issue of first impression in Wisconsin, we examine the law of other jurisdictions in reaching our conclusion.

The majority of jurisdictions that have reviewed this issue have concluded that stop-loss insurance does not affect the uninsured status of an employee benefit plan. *See Thompson v. Talquin Bldg. Prods. Co.*, 928 F.2d 649, 653 (4th Cir. 1991); *Brown v. Granatelli*, 897 F.2d 1351, 1354-55 (5th Cir. 1990), *cert. denied*, 498 U.S. 848 (1990); *United Food & Commercial Workers & Employer's Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161-62 (9th Cir. 1986); *Drexelbrook Eng'g Co. v. Traveler's Ins. Co.*, 710 F. Supp. 590, 597 (E.D. Pa. 1989), *aff'd*, 891 F.2d 280 (3d Cir. 1989). In *Thompson*, the appellants argued that ERISA did not preempt the applicable state law because the Plan obtained stop-loss insurance to protect itself against claims exceeding $25,000. The Fourth Circuit Court of Appeals, however, disagreed with the appellants:

> Even with the stop-loss coverage, [the] Plan is directly liable to the [company's] employees for any amount of benefits owed to them under the Plan's provisions. The purpose of the stop-loss insurance is to protect [the company] from catastrophic losses, it is not accident and health insurance for employees. Instead of covering employees directly, the stop-loss insurance covers the Plan itself.

*Id.* at 653. Thus, the court held that the company's purchase of stop-loss insurance did not change the uninsured status of the Plan for purposes of ERISA.

In *Pacyga*, the Ninth Circuit Court of Appeals similarly concluded that the purchase of stop-loss insurance does not convert a self-funded employee benefit plan into an insured plan. *Id.* at 1161-62. The court noted that stop-loss insurance does not provide the Plan's participants with health insurance. Rather, it protects the Plan itself in the event it is required to pay out more than a certain amount each year. The court further noted that "[t]he stop-loss insurance does not pay benefits directly to participants, nor does the insurance company take over administration of the Plan at the point when the aggregate amount is reached." *Id.* at 1161. The court therefore concluded that "no insurance is provided to the participants, and the Plan should properly be termed a non-insured plan, protected by the deemer clause and preemptive of [state] law." *Id.* at 1161-62.

We are persuaded by the reasoning of *Thompson* and *Pacyga.* In this case, Hartzell Manufacturing purchased a stop-loss policy that covered the Hartzell Plan in the event the Plan was required to pay a certain amount in a given year. The stop-loss policy is not health insurance, and it does not pay benefits directly to participants. Rather, the policy is designed to protect Hartzell Manufacturing from catastrophic losses. Further, the policy does not cover participants of the Plan, but instead covers the Plan itself. As a result, the Plan, and not the insurance company, is solely liable to the participants for the payment of benefits. Accordingly, we conclude that the stop-loss insurance does not alter the uninsured status of the Hartzell Plan and that

ERISA preempts application of the *Rimes* doctrine. The Hartzell Plan is therefore entitled to subrogation under ERISA, and it will not become liable for payment of Breault's medical bills until such time as she agrees to sign the subrogation agreement.

*By the Court.*—Order reversed.