**BCBSM, INC. d/b/a Blue Cross Blue Shield of Minnesota, Appellant,**

v.

**MINNESOTA COMPREHENSIVE HEALTH ASSOCIATION, Respondent.**

No. A05–942.

Court of Appeals of Minnesota.

April 12, 2006.

Diane B. Bratvold, Karen B. Andrews, Rider Bennett, L.L.P., Minneapolis, MN, for appellant.

Ryan J. Burt, Halleland Lewis Nilan & Johnson, P.A., Minneapolis, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; WILLIS, Judge; and STONEBURNER, Judge.

## OPINION

WILLIS, Judge.

In this appeal from summary judgment, appellant argues that the district court erred by ruling that respondent properly assessed appellant for premiums from its sale of stop-loss insurance, based on the determination that stop-loss insurance is health-and-accident insurance. We affirm.

## FACTS

Appellant BCBSM, Inc. (BCBSM), an insurance company that does business in Minnesota as Blue Cross Blue Shield of Minnesota, is a member of respondent Minnesota Comprehensive Health Association (MCHA). From 1996 through 2002, BCBSM paid assessments to MCHA based on the amount of accident-and-health-in-

surance premiums collected by BCBSM, as required by statute, to help fund insurance that MCHA offers to individuals with high-risk health conditions who cannot otherwise obtain coverage. Included in this category of premiums used to calculate the assessment were premiums on stop-loss insurance purchased by employers who otherwise self-insure for their employees' health-care costs. Such inclusion was not questioned until BCBSM brought this challenge. Stop-loss insurance may be purchased by employers that self-insure their employees' health-care costs rather than purchasing health insurance but that want to protect themselves against employee health-care expenses above a stated dollar amount.

In 2003, BCBSM claimed for the first time that stop-loss insurance is not accident-and-health insurance and consequently that premiums received for stop-loss insurance should not be included in calculating its assessment. It appealed to the MCHA, seeking a reduction of its 2002 assessment. Before the MCHA reached a decision, BCBSM initiated this action in district court and withdrew its appeal to the MCHA. After a hearing, the district court granted summary judgment to MCHA. This appeal follows.

## ISSUE

Is stop-loss insurance for employee health-care expenses within the statutory definition of "accident-and-health insurance" so that stop-loss premiums are included in the calculation of the Minnesota Comprehensive Health Association's annual assessments of its members under Minn.Stat. § 62E.11, subd. 5 (2004)?

## ANALYSIS

In reviewing an appeal from summary judgment, the appellate court will determine whether there are any genuine issues of material fact and whether the district court erred as a matter of law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). The construction of a statute is a question of law. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

■ When interpreting a statute, courts will first determine whether the language of the statute, on its face, is clear or ambiguous. *Molloy v. Meier,* 679 N.W.2d 711, 723 (Minn.2004). "If the words of the statute are 'clear and free from all ambiguity,' further construction is neither necessary nor permitted." *Owens v. Water Gremlin Co.,* 605 N.W.2d 733, 736 (Minn. 2000) (quotation omitted); *see* Minn.Stat. § 645.16 (2004). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quotation omitted). In that event, the court must ascertain the intent of the legislature. *See* Minn.Stat. § 645.16. Legislative intent may be determined by considering factors such as the need for the law, the circumstances under which it was enacted, its purpose, legislative history, and administrative interpretations. *Id.* When a statute was not particularly clear and the parties provided reasonable but opposing interpretations, the court of appeals has concluded that the statute was ambiguous. *In re Will of Kipke,* 645 N.W.2d 727, 731 (Minn.App.2002), *review denied* (Minn. Aug. 20, 2002). We conclude that Minn. Stat. § 62E.11, subd. 5 (2004), is ambiguous and that statutory construction is necessary, therefore, to determine its meaning.

The legislature established the Minnesota Comprehensive Health Association (MCHA) "to promote the public health and welfare of the state." Minn.Stat. § 62E.10, subd. 1 (2004). All insurers,

self-insurers, and other specified insurance plans, programs, and organizations are members of the MCHA. *Id.* Membership in MCHA is a mandatory condition of doing business as an accident-and-health insurer, a self-insurer, a health-maintenance organization, or a community-integrated service-network in the state. *Id.,* subd. 3 (2004). The MCHA is statutorily mandated to offer health-insurance coverage to eligible persons who are otherwise unable to obtain insurance. Minn.Stat. § 62E.12(a) (2004) (mandating MCHA to offer such policies); Minn.Stat. § 62E.14, subd. 1 (2004) (providing for enrollment by eligible persons). Generally, this allows Minnesota residents who have been rejected for standard insurance coverage because of high-risk health conditions to obtain health insurance. *See* Minn.Stat. § 62E.14, subd. 1.

Those insured under these provisions pay premiums for their coverage. Minn. Stat. § 62E.08, subd. 1 (2004). But to the extent that the premiums are not sufficient to cover claims and expenses, the legislature also provided that MCHA's expenses for losses resulting from claims and for operating and administrative expenses are to be funded by annual assessments levied on MCHA's members. Minn.Stat. § 62E.11, subd. 5. The amount of the assessment is "equal to the ratio of the contributing member's total accident and health insurance premium, received from or on behalf of Minnesota residents as divided by the total accident and health insurance premium, received by all contributing members from or on behalf of Minnesota residents." *Id.*

MCHA's assessment of each of its contributing member is based on the amount of the accident-and-health insurance premiums collected by that member. *Id.* The term "accident and health insurance policy" is defined as "insurance or non-profit health service plan contracts providing benefits for hospital, surgical and medical care." Minn.Stat. § 62E.02, subd. 11 (2004). The statute then provides that accident-and-health insurance *does not* include eight specified types of other coverage, including disability insurance; automobile medical coverage; supplemental liability insurance; certain coverage that makes fixed payments; credit accident-and-health insurance; dental- or vision-care insurance; blanket accident-and-sickness insurance under section 62A.11; and accident-only coverage based on the cost of the covered services. *Id.*

Stop-loss coverage is

[i]nsurance that protects a self-insured employer from catastrophic losses or unusually large health costs of covered employees. Stop-loss insurance essentially provides excess coverage for a self-insured employer. The employer and the insurance carrier agree to the amount the employer will cover, and the stop-loss insurance will cover claims exceeding that amount.

*Black's Law Dictionary* 807 (7th ed.1999); *see* Minn.Stat. § 60A.235 (2004) (discussing standards for determining whether insurance policy is one for accident-and-sickness insurance or a stop-loss policy for purposes of regulation of the business of insurance).

■ The district court invoked the doctrine of "expressio unius est exclusio alterius" or "the expression of one thing indicates the exclusion of another." *See Harris v. County of Hennepin,* 679 N.W.2d 728, 731 (Minn.2004); *see also* Minn.Stat. § 645.19 (2004) ("Exceptions expressed in a law shall be construed to exclude all others."). The doctrine is a rule of construction and an aid to determining legislative intent. *Northern Pac. Ry. Co. v. City of Duluth,* 243 Minn. 84, 89, 67 N.W.2d 635, 638 (1954). The district court found "that stop-loss coverage,

although providing coverage only after the specified attachment point is reached, provides benefits for hospital, surgical and medical care." The district court reasoned that, had the legislature intended to exclude stop-loss premiums from the calculation of MCHA's assessment, it would have done so explicitly, as it did with certain other categories of insurance.

BCBSM raises a number of arguments in support of his claim that stop-loss premiums should not be included in calculating its assessment. We first examine its contention that because stop-loss coverage is not mentioned in chapter 62E or specifically defined as accident-and-health insurance, the legislature did not intend that premiums for such insurance should be included in calculating the assessment. Courts may not add words to a statute to "supply that which the legislature purposely omits or inadvertently overlooks." *Goplen v. Olmsted County Support & Recovery Unit*, 610 N.W.2d 686, 689 (Minn.App. 2000) (quotation omitted).

We agree with the district court that the legislature's decision not to specifically exclude stop-loss insurance from the definition of accident-and-health insurance in Minn.Stat. § 62E.02, subd. 11, is compelling support for the assertion that it is accident-and-health-insurance subject to inclusion in the calculation of the assessment. The Indiana Court of Appeals considered a similar circumstance in addressing the issue of whether a stop-loss carrier was a member of the state's comprehensive-health-insurance association and subject to mandatory assessments. *Avemco Ins. Co. v. State ex rel. McCarty*, 812 N.E.2d 108, 121 (Ind.Ct.App.2004) (upholding preliminary injunction ordering stop-loss insurer to comply with orders of the Commissioner of Insurance). There, the court found it significant that while the issuers of certain categories of insurance

were excluded from membership in the association, stop-loss carriers were not. *Id.* at 123. As evidenced by the enactment of Minn.Stat. §§ 60A.235–.236 (2004), which describes standards for determining whether an insurance policy is accident-and-sickness insurance or stop-loss insurance for the purpose of regulating the business of insurance, the legislature was aware of the existence of such insurance and could have specifically excluded it from assessment. Applying the same analysis used in *Avemco*, we likewise find that the Minnesota legislature's failure to exclude stop-loss insurance from the definition is a strong indication that it intended that stop-loss insurance is accident-and-health insurance.

Further, Minnesota law specifically lists some 15 lines of insurance that can be sold in the state, but that list does not include stop-loss insurance. Minn.Stat. § 60A.06, subd. 1 (2004). This supports MCHA's claim that stop-loss insurance is not a separate and distinct line of insurance but rather is a form of one of the enumerated lines, namely accident-and-health insurance. If this were not so, BCBSM would have no authority to sell stop-loss insurance in Minnesota.

In support of its argument that stop-loss insurance is not accident-and-health insurance, BCBSM contends that an important distinction between the two is that accident-and-health-care policies provide *employees* with benefits for hospital, surgical, and medical care, while stop-loss insurance provides no medical-care benefits for an employee. Instead, it covers the *employer's* risk for health-care expenses in excess of a stated amount, or attachment point. Further, BCBSM contends that stop-loss insurance premiums are paid from the employer's assets, and the employer receives the benefits of the policy. BCBSM contends, therefore, that "if stop-loss insur-

ance provides benefits to self-insured employers, it cannot also provide benefits to employees for hospital, surgical and medical care."

We are not persuaded by BCBSM's argument. Stop-loss insurance plainly provides benefits for the expenses of medical care, and we conclude that the fact that it is paid to the employer to cover expenses rather than directly to employees or providers is a difference without a distinction. The underlying expenses being covered in either case are for hospital, surgical, or medical care. In *Avemco,* the court held, in relevant part, that "the medical stop loss insurers insure for medical expenses incurred by individuals within the scope of their policies." 812 N.E.2d at 122. It rejected the insurer's argument that they were not members of the state's comprehensive-health-insurance association because, as stop-loss insurers, they did not provide health insurance and stop-loss insurance benefits were received by the employer rather than the employees. *Id.* at 124.

BCBSM next cites Minn.Stat. § 60A.235, subd. 1, which specifically addresses whether a policy is considered to be a health-plan contract[1] or a stop-loss contract, for the proposition that because the legislature expressly distinguished between stop-loss policies and accident-and-sickness policies,[2] MCHA's position that stop-loss insurance and accident-and-health insurance are indistinguishable must fail.

■■■ Section 60A.235 sets out standards for determining whether a policy is a health-plan contract or a stop-loss contract for purposes of regulating the business of insurance. Minn.Stat. § 60A.235, subd. 1. The statute provides that if a policy issued to an employer for the health-care expenses of its employees has an attachment point of less than $10,000 per individual, it is considered a health plan. *Id.,* subd. 3(a) (also providing an alternative method of calculating attachment point). In stop-loss insurance, an "attachment point" means "the claims amount beyond which the insurance company or health carrier incurs a liability for payment." Minn.Stat. § 60A.235, subd. 2(a). Section 60A.235 appears to be directed at the issue of whether stop-loss policies issued in Minnesota are governed by state law or by the federal ERISA law. The latter has been described as "a comprehensive federal statute regulating private employee benefit plans, including plans maintained for the purpose of providing medical or other health benefits for employees." *Am. Med. Sec., Inc. v. Bartlett,* 111 F.3d 358, 361 (4th Cir.1997). ERISA broadly preempts states from regulating fully self-funded plans. *Id.* Nonetheless, under a "savings clause," state laws that regulate insurance are saved from ERISA preemption. *Id.* But a state law that merely "deems" an employee-benefit plan to be an "insurance company" in order to regulate it is preempted. *Id.*

A number of cases, including some that BCBSM cites, have addressed the issue of whether stop-loss insurance is health insurance for purposes of determining whether ERISA or state law governs. *See, e.g., Ramsey County Med. Ctr., Inc. v. Breault,* 189 Wis.2d 269, 525 N.W.2d 321,

---

1. "Health plan" is defined in Minn.Stat. § 62A.011. Minn.Stat. § 60A.235, subd. 2(e). Minn.Stat. § 62A.011, subd. 3 (2004), defines "health plan" as a policy of accident-and-sickness insurance as defined in Minn.Stat. § 62A.01.

2. Minn.Stat. § 60A.235 uses the term "accident-and-sickness insurance," while Minn. Stat. § 62E.02, subd. 11, uses the term "accident-and-health insurance."

325 (1994) (holding that stop-loss insurance is not health insurance under ERISA and that ERISA preempts application of state law). As the court in *Avemco* noted, however, issues raised in ERISA preemption cases generally involve "1) whether the purchase of stop loss insurance by employee benefit plans alters the preemption analysis under ERISA, or 2) the extent to which states may indirectly regulate ERISA plans." 812 N.E.2d at 122 n. 6 (citations omitted). Thus, *Avemco* found these cases irrelevant to a determination of whether stop-loss carriers were members of the Indiana comprehensive-health-insurance association because such cases primarily addressed ERISA preemption issues. *Id.* Likewise, we do not find determinative the cases addressing the issue of ERISA preemption cited by BCBSM.

BCBSM also cites a tax case, in which the Minnesota Supreme Court held that "premiums received by an insurer on stop-loss insurance policies issued to employers who self-fund health care coverage for their employees" are not subject to a premium tax. *BCBSM, Inc. v. Comm'r of Revenue*, 663 N.W.2d 531, 531, 534 (Minn.2003).[3] BCBSM asserts that the supreme court made two relevant observations regarding stop-loss policies. First, under a self-funded plan, "the employees' health care costs are paid directly out of the employer's assets and it is the employer who assumes the risks for the employees' health care coverage." *Id.* at 532. Second, because a stop-loss policy covers "the employer's risk above a specified amount known as the attachment point," the stop-loss insurer consequently "has no direct [insuring] relationship with the employee[s]." *Id.* Consequently,

BCBSM contends, stop-loss policies should be considered excess insurance for employers rather than accident-and-health insurance for employees.

We do not find *BCBSM* helpful. First, it interprets tax provisions that are not at issue here. Further, as already noted, we find unpersuasive BCBSM's argument that because stop-loss benefits are paid to the employer, they cannot constitute accident-and-health benefits.

■ Next, we address the purpose of the statute. Minn.Stat. § 645.16. MCHA was created to provide health-insurance benefits to Minnesota residents who would otherwise be unable to obtain insurance because of their high-risk health conditions. *See* Minn.Stat. §§ 62E.12(a), 62E.14, subd. 1(c). The legislature determined that unfunded expenses and claims should be paid for by assessments based on the premiums collected by accident-and-health insurers. Minn.Stat. § 62E.11, subd. 5.

BCBSM asserts that the amount realized from the assessments would remain the same regardless of whether stop-loss premiums are included and that the only effect is that the assessment would be reallocated. But we determine that the legislature intended that insurers who offer stop-loss insurance should be among those assessed. Consequently, we conclude that premiums for stop-loss insurance were properly included as accident-and-health-insurance premiums in calculating MCHA's annual assessment of its members.

3. The parties note that Minn.Stat. § 297I.05, addressing the premium tax at issue, was amended so that "direct business" is defined as including stop-loss insurance. Minn.Stat. § 297I.01, subd. 6a (Supp.2005) (containing amended language). They dispute the effect of this amendment on the holding in *BCBSM*, 663 N.W.2d at 534, but we do not find it necessary to address this dispute.

## DECISION

We affirm the decision of the district court that stop-loss premiums are included in the definition of accident-and-health insurance for purposes of calculating MCHA's annual assessment of its members.

**Affirmed.**