2003 OK CIV APP 41

**Don CALES, Plaintiff/Appellant,**

v.

**LE MARS MUTUAL INSURANCE COMPANY, Defendant/Appellee.**

**No. 97,521.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 3, 2002.

Rehearing Denied Feb. 24, 2003.

Certiorari Denied April 14, 2003.

Mark S. Cooper, Norman, OK, for Plaintiff/Appellant.

Tom E. Mullen, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, OK, for Defendant/Appellee.

Opinion by JERRY L. GOODMAN, Judge:

¶ 1 This is Don Cales' (Cales) appeal from the trial court's March 8, 2002, order denying his motion for a new trial. Cales sought a new trial after the trial court entered its February 6, 2002, judgment in favor of Le Mars Mutual Insurance Company (Insurer) following a jury verdict in Insurer's favor. Cales sued Insurer for breach of contract and bad faith failure to properly investigate his claim. The trial court, on its own motion, bifurcated the two theories of recovery and tried the contract claim first, resulting in a verdict for Insurer. Cales contends this ruling, among others, was erroneous. Based upon our review of the facts and applicable law, we reverse and remand for a new trial.

### FACTS

¶ 2 It is undisputed that Insurer had a policy for property insurance in effect covering the structure and contents of Cales' commercial building, located in Tonkawa, Oklahoma, on May 3, 1999. What is disputed is whether Cales' roof was damaged on that date and, if so, what caused the damage. Cales, who was out of town on May 3, 1999, alleged his roof was damaged either by a tornado, hail, or other severe weather. Insurer hired an independent adjuster to inspect the roof. The adjuster and, later, the Insurer, concluded any damage to the roof was not done on that date, but preexisted the effective date of its policy. Insurer therefore denied coverage. After Cales complained to the Oklahoma Insurance Commissioner, Insurer invited Cales to submit additional material. Cales then collected additional information in the form of fire department and weather service reports, eyewitness accounts, and photos, all of which supported Cales' contention that, in fact, severe weather had passed over Tonkawa as part of a larger tornado system that caused extensive damage elsewhere in Oklahoma that same day. This new information was given to Insurer, who allegedly declined to review or investigate it by contacting the witnesses. Insurer again denied the claim. At the Insurance Commissioner's request, Insurer hired a second adjuster, but did not give Cales' new information to the adjuster. When the second adjuster reported the damage was preexisting, Insurer informed the Commissioner the claim would remain denied.

¶ 3 Cales sued Insurer May 2, 2000, for breach of contract in failing to pay the claim, and for bad faith in its investigation and handling of the claim. Insurer denied the allegations, and the matter was set for trial. Prior to trial, the trial court determined that some of the evidence Cales wanted to present to the jury was probative as to his bad faith claim, but was prejudicial in the context of Cales' contract claim.[1] Citing jury confu-

---

1. Cales' evidence consisted of written eyewitness reports, reports from the Tonkawa Fire Department, the National Weather Service, local newspapers, photos, and affidavits from roofers, neighbors, and contractors, all of which support Cales' claim that severe weather, including hail,

sion, the trial court bifurcated the two issues, and submitted the case to the jury on Cales' contract claim only. Following the adverse verdict, Cales appealed, claiming the trial court lacked any basis to bifurcate the claims.

## ISSUES

### Bifurcation

¶ 4 The trial court, in a court minute filed September 18, 2001, sua sponte bifurcated the issues of breach of contract and bad faith. The trial court found that the letters and other evidentiary material collected by Cales and submitted to Insurer as a supplemental proof of loss contained "inadmissible hearsay which is potentially highly prejudicial." The court found that while such evidence was "admissible and highly relevant" to the bad faith claim, it would be "prejudicial" to introduce such evidence to the jury in the breach of contract claim.[2] The trial court ordered the contract action to be tried first.

¶ 5 We further note the trial court incorrectly describes Cales' suit as "two causes of action." Cales has but one cause of action: for damages arising out of Insurer's failure to pay Cales' claim. In support of that cause of action Cales has two interrelated theories of recovery. The first, sounding in contract, is for damages arising out of Insurer's failure to pay the claim in breach of the insurance contract. The second theory of recovery sounds in tort, based on Cales' allegation that Insurer acted in bad faith by ignoring relevant information in its investigation of the claim, leading to its decision not to pay. These theories are connected and, as set out below, should not be bifurcated.

¶ 6 This issue has been addressed by our courts numerous times, most recently in *Newport v. USAA*, 2000 OK 59, ¶ 26, 11 P.3d

190, 198. There, the Oklahoma Supreme Court stated:

The controlling law on bifurcation is found in this Court's decision in [*Buzzard v. McDanel*, 1987 OK 28, 736 P.2d 157]. There, insureds brought an action against their UM carrier for its bad-faith refusal of the claim. The trial court granted the insurer's motion to bifurcate trial of the issues of bad faith and whether insureds were legally entitled to recover from the underinsured motorist.... *This Court held that the issue of whether the insureds had a legal right to recover from the uninsured motorist was not separable from the question of whether the insurer had a good-faith belief that it had a justifiable reason for withholding payment under the policy. Id.* at 159. Therefore, the trial court had "no authority ... to require [the insureds] to submit to a separate trial as to the comparative fault, of the [uninsured motorist]." (Emphasis added.)

¶ 7 In *Buzzard v. McDanel*, 1987 OK 28, ¶¶ 9, 10, 736 P.2d 157, 159, the court stated:

We agree with the position urged by petitioners. In *McCorkle v. Great Atlantic Insurance Co.*, [1981 OK 128, ¶ 21, 637 P.2d 583, 587] this Court stated:

[T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, *bad-faith conduct, including the unjustified withholding of payment due under a policy,* and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

---

passed over Tonkawa on May 3, 1999. While these reports in their basic form could be considered hearsay and thus would be inadmissible, most could be easily rehabilitated if sponsored by their originating authors. On the other hand, if these reports were not offered for the truth therein, but merely as proof Insurer was on notice to conduct further investigations, such documents would not be hearsay and would be admissible to show Insurer knew of more facts, but failed to act in good faith on them, and that the breach of

contract by failure to pay the claim was without a basis in fact.

2.  How the same evidence could at once be inadmissible hearsay and at the same time be admissible and highly relevant is not clear. Nor is it explained how the allegedly inadmissible hearsay could be prejudicial when presumably it would never be admitted into evidence.

In the present case petitioners' action brings into question Farmers' handling of petitioners' claim for benefits under the insurance policy. *Farmers' actions, in this regard, must be assessed in light of all the facts known and knowable concerning the claim at the time petitioners requested Farmers to perform its contractual obligations.* Thus, the issue of whether, in fact, petitioners had a legal right to recover from the City of Norman is not separable from the question of whether Farmers had a good faith belief, *at the time its performance was requested,* that it had a justifiable reason for withholding payment under the policy. (Emphasis added.)

¶ 8 In *McCorkle, Buzzard, Newport,* and now in the case before us, the question to be presented to the jury was whether Insurer engaged in "unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy." *Buzzard,* 1987 OK 28 at ¶ 9, 736 P.2d at 159. In other words, did Insurer act in bad faith during its investigation of the claim (the tort) which led to its withholding of benefits due under the policy (the contract claim). Further, "the issue of whether [Cales] had a legal right to recover from [Insurer] was not separable from the question of whether the insurer had a good-faith belief that it had a justifiable reason for withholding payment under the policy." *Newport,* 2000 OK 59 at ¶ 26, 11 P.3d at 198. The trial court's decision to bifurcate Cales' theories of recovery was erroneous.

¶ 9 We are not persuaded by Insurer's argument that *Buzzard, McCorkle,* and *Newport* are distinguishable because they involve a third-party tortfeasor and underinsured motorist coverage. Nor are we impressed with the argument, set out without analysis in Insurer's brief, that *Christian v. American Home Assurance Co.,* 1977 OK 141, 577 P.2d 899, *McCorkle,* and *Manis v. Hartford Fire Ins. Co.,* 1984 OK 25, 681 P.2d 760, are distinguishable because "the word bifurcation

is not used and 12 O.S.2018(D) is not cited or quoted." [3]

¶ 10 In summary, the trial court was presented with the very similar situation addressed in *Buzzard* and *Newport: i.e.,* did Insurer handle Cales' claim in a good faith manner so as to support Insurer's decision to deny Cales' claim because his damage was not covered by the terms of the contract or, as Cales alleges, did Insurer choose to overlook relevant information and thus mishandle the investigation of the claim in such a way as to provide a pretext for denying the claim in violation of its contract with Cales. As the cases cited above note, bifurcation of these issues is not authorized. The trial court erred in so doing. The trial court should have granted Cales' motion for new trial. We therefore reverse and remand for a new trial.

¶ 11 Because of the disposition of this issue, we need not reach the merits of other issues preserved for review. Those issues arising out of the conduct of the trial, including the issues of juror challenges and newly discovered evidence, are not addressed.

¶ 12 Further, we reverse the trial court's February 6, 2001, order awarding an attorney's fee to Insurer for two reasons. First, because of our holding above, Insurer is no longer the prevailing party, a necessary prerequisite to the award of an attorney's fee under 36 O.S.2001, § 3629(B). [4] Secondly, Insurer did not comply with § 3629(B) because it did not "submit a written offer of settlement or rejection of the claim to the insured" within 90 days after Cales presented Insurer with the supplemental proof of loss, following the first denial of the claim. Once it is determined that Insurer has breached the terms of § 3629(B), we hold *Shinault v. Mid–Century Ins. Co.,* 1982 OK 136, 654 P.2d 618, applies and Insurer has waived its right to an attorney's fee under that statute.

---

**3.** These cases were cited by Cales in support of his argument that the trial court erred in its bifurcation of his contact and bad faith theories.

**4.** "It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settle-

ment or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party."

¶ 13 The trial court's March 8, 2002, order denying Cales' motion for new trial is reversed and the matter is remanded for a new trial.

¶ 14 REVERSED AND REMANDED FOR NEW TRIAL.

COLBERT, P.J., and RAPP, J., concur.