**AG EQUIPMENT COMPANY,**
**Plaintiff,**

v.

**AIG LIFE INSURANCE COMPANY,**
**INC., Defendant.**

**Case No. 07–CV–0556–CVE–PJC.**

United States District Court,
N.D. Oklahoma.

Feb. 11, 2010.

Brian Jay Rayment, Kivell Rayment & Francis, Tulsa, OK, Dana Louann Kurtz, Kurtz Law Office LLC, Lockport, IL, for Plaintiff.

## OPINION AND ORDER

CLAIRE V. EAGAN, Chief Judge.

On January 8, 2010, Magistrate Judge Paul J. Cleary entered a report and recommendation (Dkt. # 491), recommending that the Motion for Fees and Expenses of Defendant AIG Life Insurance Company, and Brief in Support (Dkt. # 394) should be denied. Defendant AIG Life Insurance Company (AIG) has filed a timely objection to the magistrate judge's report and recommendation. Dkt. # 492.

### I.

AG Equipment Company (AG) offered its employees medical insurance through a self-funded Medical Benefits Plan (the Plan) and, in May 2003, AG obtained stop-loss insurance from AIG to offset the risk of catastrophic losses under the Plan. In 2001, AG hired Suzanne Ash–Kurtz, the ex-wife of AG's owner, Grady Ash, to perform some legal work for AG, but the nature of her employment relationship with AG is disputed.[1] In late 2003, Ash–Kurtz became seriously ill and was diag-

---

1. AG argued that Ash–Kurtz's was AG's in-house counsel and was a full-time employee. AIG argued that, at most, Ash–Kurtz performed part-time legal work for AG.

nosed with Leiomyosarcoma in the connective tissue surrounding her lungs. AG agreed to cover Ash–Kurtz's medical expenses under the Plan, and her medical bills were substantial. Between 2004 and 2006, the Plan sought approximately $279,000 from AIG as reimbursement for Ash–Kurtz's medical bills, and AIG paid these claims.

On April 24, 2007, AIG mailed a check for $467,775.89 to AG to reimburse AG for medical expenses paid on behalf of Ash–Kurtz between May 2006 and April 2007. Later that same day, AIG received a phone call from an AG employee who claimed that he found documents suggesting that Ash–Kurtz did not work for AG and that she was on the payroll solely for the purpose of providing Ash–Kurtz health benefits under the Plan. AIG stopped payment on the check and opened an investigation into the employee's allegations. AIG requested additional information from AG about Ash–Kurtz's employment. AG claimed that Ash–Kurtz was AG's in-house counsel and was a full-time employee. However, AIG's initial investigation was inconclusive and it requested additional information, including examinations under oath (EUO) of Ash and Ash–Kurtz. AG's attorney, Dana Kurtz,[2] claimed that AIG was not entitled to take EUOs of any AG employee, and neither Ash nor Ash–Kurtz gave an EUO to AIG. AIG and AG reached a standoff. AIG refused to issue a new check until AG complied with AIG's requests for additional information; AG demanded immediate payment of its claim and refused to provide the additional information requested by AIG.

In September 2007, AG filed a lawsuit in state court alleging that AIG breached the stop-loss policy by refusing to reimburse AG for Ash–Kurtz's medical expenses. Dkt. # 2–2. The case was removed to federal court. When the case was filed, AIG had not yet denied AG's claim for reimbursement of Ash–Kurtz's expenses and the insurance claim was still pending. On May 20, 2008, AG amended its complaint to include a bad faith claim against AIG. Dkt. # 52. AIG filed an amended answer and asserted counterclaims of breach of contract and bad faith. Dkt. # 65. AIG subsequently amended its answer to allege additional counterclaims against AG for fraud, unjust enrichment, money had and received, and conversion. Dkt. # 73. Throughout the case, AIG took the position that AG's insurance claim was deemed denied due to the filing of a counterclaim for breach of contract against AG.[3]

The case proceeded to trial on February 19, 2009. The jury found for AIG on its counterclaims of breach of contract and fraud, and awarded AIG $279,014.11. This verdict also meant that AIG did not have to pay AG $467,775.89 for Ash–Kurtz's medical expenses between May 2006 and April 2007. The Court entered judgment

---

**2.** Dana Kurtz is Ash–Kurtz's step-daughter. Throughout this Opinion and Order, the Court will refer to Suzanne Ash–Kurtz as "Ash–Kurtz" to avoid confusion with plaintiff's counsel, Dana Kurtz.

**3.** Throughout discovery, AIG argued that it had never denied the claim, as shown by AIG's response to the following interrogatory:

> Interrogatory No. 19: Identify all facts upon which you relied upon to deny or stop payment on the claim.

Response: [AIG] has never denied the claim in question....

Dkt. # 124–2, at 76. The magistrate judge ordered AIG to respond to this interrogatory. Dkt. # 188, at 8–9. He also noted that plaintiff's counsel took a deposition of Linda Subbiondo, AIG's claims manager, in October 2008, and asked her 29 times if AIG had denied AG's claim for reimbursement of Ash–Kurtz's medical expenses before Subbiondo admitted that she did not know whether the claim had been denied. *Id.*

in favor of AIG on February 25, 2009. Dkt. # 382. AIG filed a motion for attorney fees (Dkt. # 394) and requested attorney fees in the amount of $517,890.15. AIG seeks attorney fees under OKLA. STAT. tit. 36, §§ 1219 and 3629.[4] The Court referred AIG's motion for attorney fees to a magistrate judge for a report and recommendation. The magistrate judge held a hearing on AIG's motion on December 16, 2009. At the hearing, new issues arose concerning AIG's entitlement to fees, and the magistrate judge ordered supplemental briefing on AIG's right to attorney fees under §§ 1219 and 3629. Both parties submitted supplemental briefs and responses on these issues.

On January 8, 2010, the magistrate judge entered a report and recommendation (Dkt. # 491) finding that AIG was not entitled to attorney fees under §§ 1219 or 3629. He determined that AIG did not reject or offer to settle the disputed insurance claim within 90 days of receiving the claim, and AIG could not recover fees under § 3629. He also found that stop-loss insurance is not "accident and health insurance" as that term is used in § 1219. Section 1219 permits an award of attorney only for disputes arising out of an "accident or health insurance" policy, and AIG was not entitled to fees under this section. AIG filed an objection (Dkt. # 492) to the report and recommendation, and AG has responded (Dkt. # 493) to AIG's objection.[5]

## II.

The Court treats AIG's motion for attorney fees as a dispositive motion and reviews the magistrate judge's report and

recommendation under Rule 72(b). *See Henderson v. Horace Mann Ins. Co.,* 560 F.Supp.2d 1099 (N.D.Okla.2008). Pursuant to Rule 72(b), defendant has filed a timely objection to the magistrate judge's report and recommendation and the Court must conduct a de *novo* review of the magistrate judge's report and recommendation. Under 28 U.S.C. § 636(b)(1), a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also Northington v. Marin,* 102 F.3d 1564, 1570 (10th Cir.1996) ("De novo review is required after a party makes timely written objections to a magistrate's report. The district court must consider the actual testimony or other evidence in the record and not merely review the magistrate's report and recommendations."). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III.

AIG objects to the magistrate judge's recommendations as to AIG's entitlement to attorney fees on two grounds. First, AIG claims that stop-loss insurance is "accident and health insurance" under Oklahoma law and it is entitled to fees under § 1219(G). Second, AIG argues that AG did not submit sufficient proof of loss and the time period for rejecting or offering to settle AG's claim never began to run, and § 3629 also provides a basis to award AIG attorney fees.

---

**4.** AIG mentioned § 3629 in a footnote only and primarily relied on § 1219 as the statutory basis for attorney fees. *See* Dkt. # 394, at 3.

**5.** The Court notes that AIG has also filed a reply (Dkt. # 494) in support of its objection

to the magistrate judge's report and recommendation. Neither Fed.R.Civ.P. 72(b) nor this Court's local rules allow replies to a report and recommendation. The reply does not contain any arguments not raised in AIG's objection, and the Court declines to strike the reply.

In diversity cases, an award of attorney fees is a matter of substantive law and the Court must apply Oklahoma law under *Erie* doctrine. *North Texas Prod. Credit Ass'n v. McCurtain County Nat'l Bank,* 222 F.3d 800, 817 (10th Cir. 2000); *Boyd Rosene & Assoc., Inc. v. Kansas Mun. Gas Agency,* 123 F.3d 1351, 1352 (10th Cir.1997); *King Resources Co. v. Phoenix Resources Co.,* 651 F.2d 1349, 1353 (10th Cir.1981). "In Oklahoma, the right of a litigant to recover attorney fees is governed by the American Rule." *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.,* 11 P.3d 162, 178–79 (Okla.2000). A litigant must pay his or her own attorney fees in the absence of a specific statute, contractual provision, or an exception to the American Rule authorizing an award of attorney fees. *Id.* at 179. Statutory provisions permitting an award of attorney fees and exceptions to the American Rule are strictly construed. *Kay v. Venezuelan Sun Oil Co.,* 806 P.2d 648, 650 (Okla.1991).

### A.

The magistrate judge determined that stop-loss insurance does not qualify as accident and health insurance under Oklahoma law, and AIG is not entitled to recover attorney fees under § 1219(G). AIG claims that it is entitled to attorney fees under § 1219, because it is the prevailing party in an insurance dispute arising out of an accident and health insurance policy. AIG argues that the Oklahoma Insurance Department categorizes stop-loss insurance as accident and health insurance, and stop-loss insurance falls within the broad category of "any insurance appertaining"

to accident and · health insurance. Dkt. # 492, at 12. AG responds that AIG may issue some types of accident and health insurance within Oklahoma, but the specific policy at issue in this case is stop-loss insurance, not accident and health insurance, and stop-loss insurance does not have to comply with state laws regulating health insurance. Dkt. # 493, at 5–7.

When an insured submits a claim under an "accident and health insurance policy," the insurer is obligated to reimburse the insured within 45 days of receiving a "clean claim." OKLA. STAT. tit. 36, § 1219(A). Under OKLA. STAT. tit. 36, § 703, " '[a]ccident and health insurance' is insurance against bodily injury, disablement, death by accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto." If a claim under an accident and health insurance policy results in litigation, the prevailing party is "entitled to recover a reasonable attorney fee to be set by the court and taxed as costs against the party or parties who do not prevail." OKLA. STAT. tit. 36, § 1219(G).

Section 703 does not expressly address whether stop-loss insurance is "accident and health insurance" and the Oklahoma Supreme Court has not ruled on this issue.[6] The Oklahoma Supreme Court has addressed the scope of § 703's definition of "accident and health insurance" in one case. *See Barnes v. Oklahoma Farm Bureau Ins. Co.,* 94 P.3d 25 (Okla.2004). In *Barnes,* the insured claimed that she was entitled to attorney fees as the prevailing party in a breach of contract claim arising

---

**6.** AIG also cites OKLA. STAT. tit. 36, § 4403, and argues that § 4403 separately defines the term "accident and health insurance." However, § 1219 specifically references § 703 as the statutory source of the definition of "accident and health insurance," and the Court will use the definition provided by § 703 in

determining if stop-loss insurance qualifies as accident · and health insurance. The Court notes that § 4403's definition does not include "insurance appertaining thereto" as accident and health insurance, and it offers a more narrow definition of accident and health insurance than § 703.

out of the denial of the insured's claim for underinsured motorist coverage. *Id.* at 25. The Oklahoma Supreme Court found that underinsured motorist coverage was expressly governed by OKLA. STAT. tit. 36, § 3636, and § 1219 did not apply to claims for underinsured motorist coverage. *Id.* at 28. The Oklahoma Supreme Court did not provide any guidance for interpreting § 703 as to any other type of insurance policy.

 AIG argues that stop-loss insurance falls within the broad definition of accident and health insurance provided by § 703, because stop-loss insurance "appertains" to a self-funded health insurance plan provided by an employer. Stop-loss insurance is generally defined as:

> coverage to self-funded plans above a certain level of risk absorbed by the plan. It provides protection to the plan, not to the plan's participants or beneficiaries, against benefits payments over the specified level, called the "attachment point." Attachment points may be "specific" or "aggregate." Specific attachment points define the level of benefits paid to individual beneficiaries beyond which the insurance company will indemnify the plan. Aggregate attachment points define the total amount of benefits paid to all participants or beneficiaries beyond which the insurance company will indemnify the plan. Stop-loss insurance is thus akin to "reinsurance" in that it provides reimbursement to a plan after the plan makes benefit payments.

*American Med. Sec., Inc. v. Bartlett,* 111 F.3d 358, 361 (4th Cir.1997). Stop-loss insurance protects a self-funded insurer, not the beneficiaries under the self-insured benefits plan, from the risk of excessive losses. *Northern Kare Facilities/Kingdom Kare, LLC v. Benefirst, LLC,* 344 F.Supp.2d 283, 289 (D.Mass.2004); *Cuttle By and Through Stickney v. Federal Employees Metal Trades Council,* 623 F.Supp. 1154, 1157 (D.Me.1985). In contrast, a standard health insurance plan pays benefits directly to the insured employee or the employee's medical provider, and state laws generally prohibit a health insurer from issuing payment to the employer on behalf of the employees. *See Associated Indus. of Missouri v. Angoff,* 937 S.W.2d 277, 283 (Mo.1996). Stop-loss insurers are generally not subject to state laws regulating health insurers. *Brown v. Granatelli,* 897 F.2d 1351 (5th Cir.1990); *Auto Club Ins. Assoc. v. Safeco Life Ins. Co.,* 833 F.Supp. 637, 642–43 (W.D.Mich.1993).

In this case, AIG did not insure AG's employees for expenses relating to bodily injury, disablement, or sickness. Instead, AIG insured AG from the risks of excessive liability under the Plan. AIG did not reimburse AG's employees or their medical providers for covered medical expenses, nor did AIG have any role in determining whether particular services were covered by the Plan. AIG issued payment directly to AG for amounts beyond an agreed-upon attachment point of $40,000. This agreement more closely resembles reinsurance or excess insurance, instead of traditional health insurance, and AIG's assertion that stop-loss insurance falls under § 703's definition of accident and health insurance is not supported by the plain language of the statute.[7]

---

**7.** The Oklahoma Insurance Department does not treat stop-loss policies as reinsurance, because this would exempt stop-loss insurers from the requirement to submit the policy to the Oklahoma Insurance Department for approval. Dkt. # 492, Ex. 2. As will be discussed below, the Oklahoma Insurance Department still makes a distinction between health insurance and stop-loss coverage for a self-fund employee benefits plan, and the Court is simply highlighting the difference between standard health insurance and the stop-loss policy at issue in this case.

AIG argues that the Oklahoma Insurance Department has issued a bulletin exempting stop-loss insurance policies from statutory requirements imposed on group accident and health insurers. Bulletin No. LH 2008–01 & PC 2008–04 states that insurance is considered a stop-loss policy if the following four requirements are satisfied:

1. The policy must be issued to, and insure, the sponsor of the plan, or the plan itself, not the employees, members or participants.

2. Payment by the insurer must be made to the sponsor of the plan or the plan itself, not the employees, members, participants, or providers.

3. The individual stop-loss amount, (i.e. retention or attachment point), must be at least $25,000.

4. The aggregate stop-loss amount, (i.e. retention or attachment point), shall be, at a minimum, 120% of the expected paid claims.

If all of the above requirements are met, then pursuant to the authority granted to the Commissioner by 36 O.S. § 3612(A), the policy will not be required to comply with Oklahoma's mandated health benefit laws. If a policy fails any one of the above requirements, then the coverage will be considered a group accident and health policy, and will be subject to all group accident and health statutes and rules.

Dkt. # 492, Ex. 2, at 1–2. AIG states it met all of these requirements and it did not have to comply with statutes governing group accident and health insurance policies.

It is unclear why AIG believes that Bulletin No. LH 2008–01 & PC 2008–04 supports its argument that stop-loss insurance should be treated as accident and health insurance, because it directly supports AG's position that stop-loss insurance is not governed by the same laws as accident and health insurance. If the Oklahoma Insurance Department treated the subject policy as stop-loss insurance, AIG did not need to comply with any requirements imposed on group accident and health insurers, and this shows that the Oklahoma Insurance Department views stop-loss insurance as something other than accident and health insurance. AIG argues that the bulletin suggests that stop-loss insurance is treated as a distinct category of accident and health insurance from "individual" or "group" accident and health insurance. The bulletin does not support such an argument, and the Court agrees with the magistrate judge's conclusion that the bulletin contradicts AIG's· argument that stop-loss insurance is accident and health insurance under Oklahoma law. *See* Dkt. # 491, at 13 ("stop-loss insurance that meets the [Oklahoma Insurance Department] requirements is not health and accident insurance nor insurance "appertaining thereto." It is clearly exempt from the Oklahoma statutes—such as § 1219—that govern such accident and health insurance.").

AIG has produced a document issued by the Oklahoma Insurance Department listing all insurers licensed to do business in Oklahoma and the types of insurance they provide, and the document states that AIG is authorized to issue variable, accident and health, and life insurance. Dkt. # 492, Ex. 1, at 3. AIG claims that this document is definitive evidence that stop-loss insurance is accident and health insurance under Oklahoma law, and states that the magistrate judge "did not accept [the Oklahoma Insurance Department's classification of stop-loss coverage as accident and health insurance." Dkt. # 492, at 12. First, in this document, the Oklahoma Insurance Department did not expressly classify stop-loss coverage as accident and health insurance. Further, just because stop-loss insurance could fall under the

broad category of accident and health insurance insofar as it relates to a medical benefits plan, this does not mean that every policy issued by AIG meets the definition of accident and health insurance policy under § 703. The Court has already determined that it does not. *See supra.*

AIG cites cases from various jurisdictions in an attempt to show that stop-loss insurance may be treated as accident and health insurance if the attachment point for reimbursement is low enough that it creates an appearance that an employer is attempting to circumvent state law through the use of a self-fund health plan that is actually funded through a stop-loss insurance policy. Dkt. # 492, at 17–21. Defendant's argument concerning Oklahoma Insurance Department Bulletin No. LH 2008–01 & PC 2008–04 shows that the Oklahoma Insurance Department has not expressed any concern about the stop-loss insurance provided by AIG to AG. AIG states that it complied with all requirements for a stop-loss insurer to avoid regulation as a health insurer, including having an attachment point of at least $25,000 per employee, and the Oklahoma Insurance Department did not treat the Policy as a health insurance policy subject to state regulation. Dkt. # 492, at 11. AIG's argument that some self-funded health plans have used stop-loss insurance to avoid regulation as a health insurer under state law does not show that all stop-loss policies are generally treated as accident and health insurance as a matter of law, nor does this argument suggest that the subject policy was treated as accident and health insurance by the Oklahoma Insurance Department.

Based on a *de novo* review, the Court agrees with the magistrate judge's determination that the stop-loss policy issued by AIG to AG does not qualify as accident and health insurance under § 703, and AIG was not required to comply with the notice requirements of § 1219 when reviewing the disputed insurance claim. Thus, AIG may also not recover attorney fees under § 1219(G) as the prevailing party in litigation concerning a disputed claim under an accident and health insurance policy.

**B.**

The magistrate judge also rejected AIG's argument that it was entitled to attorney fees under § 3629 as the prevailing party in a lawsuit between an insurer and its insured, because AIG did not reject or offer to settle AG's disputed insurance claim within 90 days of receiving it. AIG argues that AG did not submit sufficient proof of loss to trigger the 90 day period under § 3629, and it is should be permitted to recover attorney fees, even though it is undisputed that AIG did not reject or offer to settle the claim until this case had been pending for at least a year after the claim was filed. AG responds that § 3629 simply requires "proof of loss" and does not permit an insurer to delay resolution of a claim until it deems the proof of loss sufficient, and AIG has waived the right to collect attorney fees under by § 3629 by refusing to reject or offer to settle AG's insurance claim within 90 days.

Section 3629 requires an insurer to provide an insured "forms of proof of loss" upon request by the insured. OKLA. STAT. tit. 36, § 3629(A). If the insured submits proof of loss to the insurer, "[i]t shall be the duty of the insurer ... to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days." *Id.* at § 3629(B). The prevailing party in any subsequent litigation is entitled to recover attorney fees and costs. *Id.* The purpose of § 3629 is to "encourage the prompt settlement of claims, in part by offering the prevailing party attorney fees." *Ass'n of County*

*Comm'rs of Oklahoma v. Nat'l American Ins. Co.*, 116 P.3d 206, 212 (Okla.Civ.App. 2005). The statute defines the "prevailing party" as "the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party." OKLA. STAT. tit. 36, § 3629(B). The insurer's penalty for failing to reject or offer to settle a claim within 90 days is the loss of any opportunity to recover attorney fees, even if the insurer is the prevailing party in a lawsuit. *Shinault v. Mid–Century Ins. Co.*, 654 P.2d 618, 619 (Okla. 1982); *Hale v. A.G. Ins. Co.*, 138 P.3d 567, 571 (Okla.Civ.App.2006); *Cales v. Le Mars Mut. Ins. Co.*, 69 P.3d 1206, 1209 (Okla. Civ.App.2002).

█ AIG argues that AG's proof of loss was insufficient and the 90 day period for AIG to reject or offer to settle the disputed insurance claim never began to run. AIG states that it requested additional information about Ash–Kurtz's eligibility for coverage and AG failed to comply with AIG's requests, and AIG had no obligation to take any action on the claim until AG provided complete proof of loss. Dkt. # 492, at 26–27. Section 3629 requires the insured to submit proof of loss, but it does not expressly toll the 90 day period if the insurer deems the proof of loss to be insufficient. AIG relies on *Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260 (10th Cir.2001), to support its argument that only proof of loss that the insurer deems adequate triggers the 90 day period to reject or offer to settle an insured's claim under § 3629. *Stauth* was a declaratory judgment action filed by Fleming Companies, Inc. and its corporate officers seeking a declaration that National Union Fire Insurance Company (National Union) was obligated to indemnify Fleming under a directors and officers liability policy. *Id.* at 1262. The Tenth Circuit found that the insured submitted sufficient proof of loss by notifying the insurer of the claims pending against the insured. However, the Tenth Circuit noted that the proof of loss requirement would often be an "anomaly" in a declaratory judgment, because the object of a declaratory judgment action is to determine whether there is coverage and such cases were often filed before the loss even occurred. *Id.* at 1264–65. In *Stauth*, the Tenth Circuit found that some type of proof of loss was necessary under § 3629, and deferred to the subject insurance policy, not § 3629, to determine what proof of loss was required. *Id.* at 1264–66. The Tenth Circuit did not construe § 3629 to require any particular proof of loss.

█ In this case, there is no dispute that AG submitted proof of loss as required by § 3629, even if AIG now disputes the sufficiency of the proof of loss. AIG does not argue that it lacked notice of AG's claim for reimbursement of Ash–Kurtz's medical expenses, and the amount of the claim is not in dispute. In fact, AIG mailed a check to AG for $467,775.89 on April 24, 2007, and stopped payment on the check after receiving information that Ash–Kurtz may not have been employed by AG. *See* Dkt. # 272, at 5. AIG initiated an investigation into the allegations concerning Ash–Kurtz's employment status, and requested additional information about Ash–Kurtz and the amount of work she performed for AG. *Id.* However, AIG did not dispute the adequacy of the proof of loss when it originally received AG's claim for reimbursement of Ash–Kurtz's medical expenses and, given the size of the disputed insurance claim, it reasonable to infer that AIG initially deemed the proof of loss sufficient. While AIG retained the right to investigate whether it was obligated to reimburse AG for Ash–Kurtz's medical expenses, it could not indefinitely hold AG's claim in abeyance without waiving its right to collect attorney fees under § 3629. *See*

*Driver Music Co., Inc. v. Commercial Union Ins. Cos.,* 94 F.3d 1428, 1432 (10th Cir.1996); *Shinault* 654 P.2d at 619. AIG requested more information in an attempt to determine whether it was obligated to pay the claim, but this is a separate issue from whether AG's initial proof of loss was inadequate. AIG has not cited any evidence suggesting that it refused to issue a decision on AG's claim because AG's proof of loss did not comply with the terms of the insurance policy; instead, AIG requested more information because it discovered information casting doubt on AG's assertion that the claim was actually covered by the Policy.[8] This is a dispute concerning coverage under the Policy, rather that the sufficiency of AG's proof of loss.

■ Based on a *de novo* review, the Court agrees with the magistrate judge's recommendation that AIG's request for attorney fees under § 3629 should be denied due to AIG's failure to reject or offer to settle AG's insurance claim within 90 days. AIG could have rejected the claim within 90 days based on AG's refusal to provide the additional information requested by AIG, and this would have preserved AIG's right to seek attorney fees. *See O'Neill v. Long,* 54 P.3d 109, 116 n. 11 (Okla.2002); *First Bank of Turley,* 928 P.2d at 304. However, AIG did not issue a decision within 90 days and AG's insurance claim was not deemed denied until May 2008, when AIG filed a counterclaim for breach of contract against AG. Almost one year elapsed from the time AIG initially sent a check to AG on April 24, 2007 and the deemed denial of the claim in May 2008, and AIG waived its right to collect attorney fees under § 3629 by failing to reject or offer to settle the claim within 90 days.

**IT IS THEREFORE ORDERED** that the magistrate judge's report and recommendation (Dkt. # 491) is **accepted,** and the Motion for Fees and Expenses of Defendant AIG Life Insurance Company, and Brief in Support (Dkt. # 394) is **denied.**

## REPORT AND RECOMMENDATION

PAUL J. CLEARY, United States Magistrate Judge.

Before the Court is the Motion for Fees and Expenses of Defendant AIG Life Insurance Company ("AIG") [Dkt. Nos. 394, 408]. AIG seeks fees in the amount of $517,890.50 and expenses of $12,860.26. A hearing on AIG's entitlement to fees was held on Dec. 16, 2009. At that time, an issue arose that neither party had briefed; therefore, supplemental briefing was scheduled and completed on Jan. 5, 2010. For the reasons set forth below I **RECOMMEND** that AIG's Motion for Fees and Expenses be **DENIED.**

### I.

### Background

This case concerns a stop-loss insurance policy (hereafter the "AIG Policy") issued

---

8. AIG argues that it did not "waive any rights to have the 'loss' sufficiently 'proved.' " Dkt. # 492, at 26. This suggests that AIG has blurred the line between proof of loss and the insured's burden to prove that coverage exists. The insured must provide proof of loss to give the insurer notice of a claim, and the proof of loss is intended to give the insurer enough information to evaluate the claim and conduct an investigation. *See First Bank of Turley v. Fidelity & Deposit Ins. Co. of Maryland,* 928 P.2d 298, 304 (Okla.1996). An insured must substantially comply with the requirement to provide proof of loss, and this standard is met if the proof of loss "serves the 'ultimate purpose of affording the insurer knowledge that could be acted upon....' " *Dixson Produce, LLC v. Nat'l Fire Ins. Co. of Hartford,* 99 P.3d 725 (Okla.Civ.App.2004) (quoting *Fox v. Nat'l Sav. Ins. Co.,* 424 P.2d 19, 25 (Okla.1967)). The insurer may request additional information and conduct further investigation before issuing a decision on whether a claim is covered, but this does not affect the adequacy of the proof of loss.

by AIG to AG Equipment ("AG").[1] A stop-loss policy was issued in May 2003 and renewed annually during the time period relevant to this lawsuit. The dispute concerned AG's right to reimbursement under the AIG policy for medical expenses paid by AG's benefits plan on behalf of Suzanne Ash–Kurtz ("Ash–Kurtz").[2] Prior to her death in November 2008, Ash–Kurtz performed legal work for AG and/or AG's owner, Grady Ash.[3] The exact nature of her employment relationship with AG, including whether she was a full-time employee and whether AG was entitled to reimbursement for medical expenses the plan paid on her behalf, were key issues in the lawsuit.

In late 2003, Ash–Kurtz became seriously ill. Between 2004 and May 2006, AIG paid some $275,000 to AG as reimbursement for Ash–Kurtz' medical claims beyond AG's self-insured or deductible amount.[4] In April 2007, AIG delivered another check to AG for $467,775 to reimburse AG for additional medical expenses incurred by Ash–Kurtz between May 2006 and April 2007 exceeding the deductible amount or so-called attachment point. On April 24, 2007, however, after learning of an allegation that Ash–Kurtz was not a full-time employee of AG, AIG stopped payment on the $467,775 check. AIG undertook an investigation of Ash–Kurtz' eligibility for coverage under the stop-loss policy. However, when AIG requested an examination under oath of Grady Ash or Ash–Kurtz, AG refused and litigation soon ensued.

On Sept. 7, 2007, Plaintiff AG filed this lawsuit claiming breach of contract and bad faith; in May 2008, AIG counterclaimed on breach of contract, fraud, and related theories. AIG was granted summary judgment on AG's bad faith claim in January 2009. The case was tried to a jury Feb. 19–24, 2009, and a verdict was rendered for AIG on all claims. Accordingly, the Court entered Judgment for AIG [Dkt. No. 382] for $279,014.11 in actual damages plus pre- and post-judgment interest.[5] The verdict also meant AIG was not liable for the $467,775 in claims AG submitted between May 2006 and April 2007. AIG now seeks an award of attorney fees as prevailing party under 36 O.S. §§ 1219 & 3629.

AG contends, *inter alia*, that § 1219 is inapplicable as a matter of law because it believes that the Court previously held

1. "Stop-loss insurance protects a self-funded [benefit] plan from extremely large losses. *Aggregate* stop-loss insurance reimburses the plan for overall expenses that exceed a given deductible, while *specific* stop-loss insurance protects the plan from large individual claims. Stop-loss policies commonly include both types of coverage." 1A Couch on Ins. § 7:34, n. 6 [3rd ed.2009]; *see American Medical Security, Inc. v. Bartlett*, 915 F.Supp. 740, 742 (D.Md.1996), *aff'd* 111 F.3d 358 (4th Cir. 1997), *cert. denied*, 524 U.S. 936, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998). The AIG Policy at issue included both aggregate excess loss coverage and specific excess loss coverage. *See* Exhibits 1–4 to Dkt. No. 200 (Sealed).

2. AG and Ash–Kurtz are represented in this action by attorney Dana Kurtz, who is Ash–Kurtz' step-daughter. Thus, the Plaintiff will be referred to herein as "Ash–Kurtz." Where necessary, Plaintiff's attorney will be referred to as "Dana Kurtz."

3. Grady Ash is the former husband of Suzanne Ash–Kurtz.

4. The Stop Loss or Excess Loss Policies provided that AG would be reimbursed by AIG for any specific or aggregate sum paid for medical expenses exceeding the deductible amounts. Between 2003 and 2007 this deductible rose from $25,000 per employee to $40,000 per employee.

5. This constituted full recovery of the money AIG had paid to AG for Ash–Kurtz' medical claims between 2004 and May 2006.

that § 1219 did not apply herein, and that under the Law of the Case doctrine the matter has been conclusively determined. AG also argues that entitlement to fees is not supported by Oklahoma law, that fees are not recoverable under 36 O.S. § 3629, and that, in any event, the amount of the fee request is unreasonable.

## II

### Applicable Legal Principles

AIG removed this case to federal court on Oct. 2, 2007, on the basis of diversity of citizenship. [Dkt. No. 2]. In diversity cases such as this, attorney fees are substantive and are determined by state law. *Oulds v. Principal Mutual Life Ins. Co.*, 6 F.3d 1431, 1445 (10th Cir.1993). Oklahoma follows the American Rule—each litigant is responsible for its own attorney fees unless that rule is modified by statute or contractual provision. *State ex rel. Dept. of Transp. v. Norman Indus. Dev. Corp.*, 2001 OK 72, ¶ 7, 41 P.3d 960, 962. Here, AIG relies on two provisions of the Oklahoma Insurance Code ("the Code"), 36 O.S. § 101 *et seq.:* § 1219(G) and § 3629(B). These sections provide for award of attorney fees under certain circumstances.

Section 3629(B) is part of the Code's general provisions governing insurance contracts.[6] This section provides:

It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. *Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party.* If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict. This provision shall not apply to uninsured motorist coverage.

Okla. Stat. tit. 36, § 3629(B) (emphasis added).

Section § 1219(G) is contained in Article 12 of the Code dealing with unfair practice and fraud. Okla. Stat. tit. 36, §§ 1201–1220. Section 1219 relates specifically to delay in payment of claims under accident and health insurance policies. Okla. Stat. tit. 36, § 1219(A). Subsection G of this provision states:

In the event litigation should ensue based upon such a claim, the prevailing party shall be entitled to recover a reasonable attorney fee to be set by the court and taxed as costs against the party or parties who do not prevail.

Okla. Stat. tit. 36, § 1219(G).

## III

### Discussion

**A. AG's Law of the Case Argument**

AG contends that the trial judge previously ruled that § 1219 is not applicable to this case. AG refers specifically to the Court's Opinion and Order of Jan. 21, 2009 [Dkt. No. 272], 2009 WL 166806, denying motions for summary judgment. There the Court made the following statement:

AG argues that AIG was required to accept or reject the claim within 45 days

---

**6.** Article 36 of the Code, 36 O.S. §§ 3601–3639.3, is entitled "The Insurance Contract in General."

of receipt of the claim under OKLA. STAT. tit. 36, § 1219, and AIG's failure to comply with § 1219 is evidence of bad faith. *Section 1219 applies to "accident and health insurance" policies and it is not clear that it applies to this case. Id.* at § 1219(A). Even if the Court were to assume that § 1219 applies, the 45 day requirement applies only to "clean claims" and the disputed claim in this case was anything but clean. *Id.* at § 1219(B)(2) (defining clean claim as a "claim that has no defect or impropriety, including a lack of any required substantiating documentation, or particular circumstances requiring special treatment that impedes prompt payment...."). Therefore, compliance or non-compliance with § 1219 does not create an inference that AIG acted in bad faith. Opinion and Order [Dkt. No. 272 at 15, n. 11] (emphasis added).

AG has misconstrued the Court's statement. In footnote 11 the Court rejected the argument that AIG's failure to accept or reject AG's insurance claim within 45 days, as required under § 1219(A), was evidence of bad faith, because this section applies only to "clean claims" and AG's claim was "anything but clean." The Court expressed reservations as to whether § 1219 applied at all to this case, but left that issue unresolved. Thus, AG has read this footnote too broadly. The law of the case doctrine does not apply here because the Court did not conclusively determine the question of § 1219's applicability.

## B. The Statutory Basis for AIG's Fee Claim

The Code is an effort to create a comprehensive statutory scheme for all types of insurance and all claims.

## (A) Section 3629(B).

The general provisions of the Code set out in Article 36 apply to all types of insurance except the following: (1) reinsurance, (2) certain insurance policies not issued for delivery in Oklahoma, (3) ocean marine and foreign trade insurance, and (4) title insurance. Okla. Stat. tit. 36, § 3601. None of these exclusions applies to the stop-loss policy at issue.[7]

 Section 3629 deals with form of proof of loss and an Insurer's duty to offer to settle or reject a claim. It imposes a duty upon an Insurer to either reject or offer to settle an insurance claim within 90 days after receiving the proof of loss. This 90–day requirement may act to restrict an Insurer's ability to claim fees as the prevailing party in litigation. Even if the Insurer is the prevailing party as defined in § 3629(B), it cannot recover attorney fees if it failed to meet the 90–day limit to reject or offer to settle the claim. *Shinault v. Mid–Century Ins. Co.,* 654 P.2d 618, 619 (Okla.1982) (Section 3629 "imposes the loss of any chance for attorney fees on the insurer as a sanction for the failure to respond within ninety days of its receipt of Proof of Loss."); *Oulds,* 6 F.3d at 1445–46 (discussing § 3629).

Section 3629(B) also limits the circumstances under which an Insurer may be considered a prevailing party. For purposes of an attorney fee award under this provision, the Insurer must first either reject or offer to settle the claim within 90 days. Insurer must then meet the definition of "prevailing party" under this provision:

> For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written

---

7. Although some jurisdictions regard stop-loss insurance as reinsurance, Oklahoma does not. *See* Bulletin No. LH 2008–01 & PC 2008–04 [Dkt. No. 484, Exh. No. "5" ("We do not consider these policies to be a form of reinsurance....")].

offer of settlement. In all other judgments the insured shall be the prevailing party.

Okla. Stat. tit. 36, § 3629.

Thus, to be entitled to fees under this section, (1) the Insurer must have either rejected or offered to settle insured's claim within 90 days of receiving a proof of loss and (2) any Judgment rendered for the Insured must not exceed the Insurer's offer of settlement.

AIG does not qualify for fees under this section because it is undisputed that AIG did not reject or offer to settle AG's claim within 90 days of its receipt. AG's claims were submitted sometime before April 24, 2007—the day when the question over Ash–Kurtz' eligibility for coverage arose. Claims for $467,775 were still pending when AG filed suit in September 2007. [Dkt. No. 272 at 7 ("When the lawsuit was filed, AIG had not formally denied AG's claim for Kurtz's medical expenses and AIG states that the claim was pending.")]. Indeed, AIG stated more than once in discovery that as late as 2008 it still had not rejected AG's claims. AIG's Jan. 11, 2008, Response to Interrogatory No. 19 of Plaintiff's First Set of Interrogatories stated:

> **Interrogatory No. 19:** Identify all facts upon which you relied upon to deny or stop payment on the claim.
>
> **Response:** *AIG Life Insurance has never denied the claim in question....*

[Dkt. No. 124, Exh. 10 at 9] (emphasis added).

In a deposition taken in October 2008, AIG's witness was asked 29 times whether the insurance company had denied AG's claim for reimbursement under the stop-loss policy. The witness finally responded that she did not know whether the claim

had been denied.[8] On Dec. 10, 2008, 2008 WL 5205192, following hearing on AG's Motion to Compel, I ordered AIG to answer whether AG's claim had been denied. Thus, more than 12 months after AG had submitted claims for reimbursement under the policy, AIG still had not offered a written settlement or rejection of those claims. Clearly, AIG did not reject or offer settlement of AG's claims within the 90–day time period and cannot claim fees under § 3629(B).

AIG argues that no proof of loss was submitted to start the 90–day period running. AIG relies on *Stauth v. National Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260 (10th Cir.2001) and contends that just as in *Stauth* a proof of loss in this case "would be an anomaly." *Id.* at 1265. I find AIG's reliance of *Stauth* to be misplaced. *Stauth* concerned a declaratory judgment action regarding whether there was coverage under a directors' and officers' policy. Under those circumstances, the court noted, a "'proof of loss' in the usual sense would be an anomaly." *Id.* Obviously, a proof of loss would be unusual in a declaratory judgment action because the object of such an action is to determine—frequently before loss is incurred—whether there is coverage under the policy.

The instant case, however, is not a declaratory judgment action concerning coverage. Plaintiff's claims are for breach of contract for specific amounts AG claims are due under the policy. AIG cannot seriously contend that AG never submitted proof of loss when the Insurer reimbursed AG more than $275,000 and delivered another check for another $467,775 based on documentation provided. The litigation did not concern the documentation of these

---

8. Deposition of Linda Subbiondo, pp. 251–59. *See* Opinion and Order on various discovery disputes, [Dkt. No. 188 at 8–9].

sums but documentation of whether Ash–Kurtz was a covered employee under the company benefits plan.

AIG also argues that it was unable to timely reject or offer to settle the submitted claim because AG did not submit necessary information and rejected AIG's request for examinations under oath. But this did not prevent AIG from rejecting the claim within the 90–day period.

Because AIG did not reject or offer to settle AG's claims within 90 days of receipt of proof of loss, it has lost its right to seek an award of attorney fees under § 3629(B).

**(1) Section 1219(G).**

AIG cannot claim attorney fees under § 1219(G) because this section is limited to accident and health insurance and the AIG Policy at issue is not accident and health insurance.

The Code defines "accident and health insurance policy" in subsection (B)(1) of section 1219 as any policy that provides accident and health insurance as defined in 36 O.S. § 703. Section 703 defines accident and health insurance as follows:

> " 'Accident and health insurance' " is insurance against bodily injury, disablement, or death by an accident or accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto.

Okla. Stat. tit. 36, § 703.

Section 1219 is limited to accident and health insurance or insurance "appertaining thereto." *See Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 94 P.3d 25, 26–29 (Okla.2004) (holding § 1219 cannot be the source of attorney fees relating to an uninsured motorist insurance policy).

The AIG Policy is a stop-loss insurance policy. It does not fit within the definition of § 1219(B)(1) because it is not insurance against bodily injury caused by an accident or expenses resulting from sickness. AG, not Ash–Kurtz, was the party to the policy, and AG, not Ash–Kurtz or her medical providers, received the benefits under the AIG Policy.[9] The policy insured AG's benefit plan against catastrophic loss if one or more covered employees incurred massive medical expenses in a given year. Stop-loss insurance is not health insurance.

As one treatise has noted:

> In the group policy situation, it is necessary to distinguish between the insurance covering the group members' health, and so forth, and the insurance that the group plan may purchase to protect itself from excess losses. **The latter (a "stop-loss" insurance policy) is for the protection of the plan, and is not health or similar insurance.**

1 Couch on Ins. § 1:46 [3rd ed.2009] (emphasis added). *See also Brown v. Granatelli*, 897 F.2d 1351, 1354 (5th Cir.1990) (distinguishing insurance policies that protect sick or injured employees from policies "protecting employee benefit plans from catastrophic loss."); *Cuttle By and Through Stickney v. Federal Employees Metal Trades Council*, 623 F.Supp. 1154, 1157 (D.Me.1985) ("Stop-loss insurance is not group health insurance providing insurance to individuals through a sponsor group. Rather, it is insurance obtained to protect self-insurers from risks beyond those upon which the premiums are based."); *United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161–1162 (9th Cir.1986) (finding that a

---

**9.** The Oklahoma Insurance Department ("OID") requires that stop-loss insurance be issued to and insure the employee benefits plan, *not the employee,* and that payment un-der the stop-loss policy be paid to the plan, *not the employee or medical providers. See* Bulletin No. LH 2008–01 & PC 2008–04 [Dkt. No. 484, Exh. "5"].

stop-loss insurance policy was not health insurance because it did not pay benefits directly to the participants and instead reimbursed the Plan in the event it had to pay more than a certain amount in claims in a given year); *Thompson v. Talquin Bldg. Products Co.,* 928 F.2d 649, 653 (4th Cir.1991) ("The purpose of the stop-loss insurance is to protect Talquin from catastrophic losses, it is not accident and health insurance for employees."); *American Med. Security,* 915 F.Supp. at 742 ("Stop-loss coverage insures the employee benefit plan, not the individual participants in the plan."); *American Med. Security v. Bartlett,* 111 F.3d 358, 361 (4th Cir.1997) ("Stop-loss insurance is thus akin to 'reinsurance' in that it provides reimbursement to a plan after the plan makes benefit payments.").

AIG contends that an OID Bulletin supports its position that stop-loss insurance is accident and health insurance. I disagree. OID Bulletin No. LH 2008–01 and PC 2008–04 provides that stop-loss insurance is insurance subject to OID regulation. "All companies writing stop loss coverage must file their policy forms with the Oklahoma Insurance Department for prior approval." [10] *Id.* The OID Bulletin also sets out the essential requirements for stop-loss insurance:

1. The policy must be issued to, and insure, the sponsor of the plan, or the plan itself, not the employees, members or participants.

2. Payment by the insurer must be made to the sponsor of the plan or the plan itself, not the employees, members, participants, or providers.

3. The individual stop-loss amount, (i.e. retention or attachment point), must be at least $25,000.

4. The aggregate stop-loss amount, (i.e. retention or attachment point), shall be, at a minimum, 120% of expected paid claims.

*Id.*

The Bulletin further states:

If all of the above requirements are met, then pursuant to the authority granted to the Commissioner by 36 O.S. § 3612(A), the policy will not be required to comply with Oklahoma's mandated health benefit laws. *If a policy fails any one of the above requirements, then the coverage will be considered a group accident and health policy, and will be subject to all group accident and health statutes and rules.*

*Id.* at 2 (emphasis added).

The clear implication of this provision is that if a stop-loss policy comports with the requirements of the OID it will not be considered accident and health insurance and will not be subject to the statutes and rules that govern those particular types of insurance. Thus, stop-loss insurance that meets the OID requirements is not health and accident insurance nor insurance "appertaining thereto." It is clearly exempt from the Oklahoma statutes—such as § 1219—that govern such accident and health insurance.

AIG also cites several cases from other jurisdictions that hold stop-loss insurance may be considered health/accident insurance for some purposes. None of these cases, however, (nor the cases found by the Court or counsel for AG) addresses the attorney fee question presented herein. The cases generally concern tax or health care financing provisions under a specific state statute. For example, *Fidelity Security Life Insurance Co. v. Director of Rev-*

10. The Bulletin at issue is designated Exhibit "5" to the Brief of Defendant AIG Life on Its Entitlement to Attorney Fees [Dkt. No. 484].

*enue,* 32 S.W.3d 527 (Mo.2000) (en banc), held that payments by an Insurer under a stop-loss policy were deductible as "health insurance benefits" for purposes of Missouri's insurance premium tax. *Id.* at 530. *BCBSM, Inc. v. Minnesota Comprehensive Health Association,* 713 N.W.2d 41 (Minn.Ct.App.2006), held that stop-loss insurance would be considered accident and health insurance for purposes of statutory assessments imposed on members of the Minnesota Comprehensive Health Association ("MCHA"). These assessments fund insurance that MCHA "offers to individuals with high-risk health conditions who cannot otherwise obtain coverage." *Id.* at 43. Under Minnesota law, "[a]ll insurers, self-insurers, and other specified insurance plans, programs, and organizations are members of MCHA" and subject to assessment. *Id.* at 43–44. Similarly, *Avemco Ins. Co. v. State ex rel. McCarty,* 812 N.E.2d 108 (Ind.Ct.App.2004), concerns financing assessments for the Indiana Comprehensive Health Insurance Association. *Id.* at 123–124.

The Court is not persuaded by these cases. The fundamental issues in determining the applicability of § 1219 are whom and what this stop-loss policy covers. The policy covers the Plan, not AG's employees, and it covers against catastrophic loss to the Plan, not health claims of the employees. Indeed, the requirements of the Insurance Bulletin cited above establishes that the OID *requires* that a stop-loss insurance policy must be issued to and insure the sponsor of the plan, *not the* employees, and benefits must be paid to the sponsor of the plan *not the employees.* Bulletin LH 2008–01 and PC 2008–04 [Dkt. No. 484, Exh. "5."].

In addition, the policies at issue make clear that they are not health policies. For instance they expressly provide that AIG's duty is to AG only, not to Ash–Kurtz or her medical providers.

The Company [AIG] has no responsibility or obligation under this Policy to directly reimburse any Covered Person or provider of professional or medical services for any benefits which the Policyholder [AG] has agreed to provide under the terms of the Plan. The Company's sole liability hereunder is to the Policyholder, subject to the terms, conditions and limitations of the Policy.

*See, for example,* [Dkt. No. 200, Exh. 1 and 2 at 4, Limitations of Coverage].

Thus, the AIG Policy is clear that AIG is not providing health insurance to AG employees and is not paying any medical provider on behalf of the employee. Rather, under the Policy AIG is reimbursing AG for benefit payments exceeding a certain deductible amount.

The AIG policy at issue is not insurance against bodily injury or expense resulting from sickness; it is insurance against catastrophic loss by the benefits Plan. Consequently, the claims asserted do not fall within the ambit of § 1219, and AIG cannot claim an award of attorney fees under this section.

### SUMMARY

AIG is not entitled to an award of attorney fees under either § 1219(G) or § 3629(B). AIG does not qualify for fees as prevailing party under § 1219 because this section is limited to accident and health insurance and the stop-loss policy at issue is neither. AIG does not qualify for fees under § 3628(B) because the Insurer did not reject or offer to settle AG's claim within 90 days of its receipt. Failure to comply with this 90–day limit bars AIG from an award of fees. *See Shinault, Oulds, supra.*

Accordingly, I **RECOMMEND** that AIG's Motion for Attorney Fees [Dkt. Nos. 394 & 408] be **DENIED.**

## OBJECTIONS

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within fourteen days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property,* 73 F.3d 1057, 1059 (10th Cir.1996) (*quoting Moore v. United States,* 950 F.2d 656, 659 (10th Cir.1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

DATED this 8th day of January, 2010.